John M. PAYNE; Paul Nolder; Frank Grazulis; Charles Lee; Richard Guy; all others similarly situated, Petitioners,

v.

COMMONWEALTH DEPARTMENT OF CORRECTIONS; Martin F. Horn, Secretary; Honorable Thomas Ridge, Governor; Robert Bitner, Chief Hearing Examiner, Respondents.

Commonwealth Court of Pennsylvania.

Submitted June 12, 2002.

Decided Dec. 5, 2002.

John M. Payne, Paul Nolder, Richard Guy and Charles Lee, petitioners, pro se.

Victoria S. Freimuth, Harrisburg, for respondents.

BEFORE: COLINS, President Judge, SMITH–RIBNER, Judge, PELLEGRINI, Judge, FRIEDMAN, Judge, LEADBETTER, Judge, COHN, Judge, LEAVITT, Judge.

OPINION BY Judge COHN.[1]

Petitioners, who are currently incarcerated at Pennsylvania State Correctional Institutions, have filed a motion for partial summary judgment with respect to a five-count petition for review filed in this Court's original jurisdiction. Respondents have filed a cross-motion for summary judgment. The two motions are now before the Court for disposition.

Between May and August 1998, the Department of Corrections (Department) disapproved the receipt of certain issues of *Penthouse* magazine and *High Society* magazine by Petitioners Grazulis, Nolder and Lee. The Department found the publications to be in violation of the obscenity provisions of the Department's "Inmate Mail and Incoming Publication" policy,

---

1. This case was reassigned to the opinion writer on October 8, 2002.

DC–ADM 803. Petitioners filed grievances challenging the Department's disapproval of the publications, but Petitioners did not prevail. Petitioners then filed their petition with this Court.

In Count I of the petition, Petitioners seek a declaration that the 1998 amendments to what is colloquially known as Pennsylvania's Obscenity Law, Section 5903 of the Crimes Code, 18 Pa.C.S. § 5903, are unconstitutional on their face and as applied to Petitioners. Petitioners also seek a declaration that DC–ADM 803 is null and void because, contrary to 18 Pa.C.S. § 5903, it does not require a judicial determination as to whether a publication is obscene. In Count II, Petitioners seek a declaration that the Department failed to promulgate DC–ADM 803 as a regulation. In Count III, Petitioners seek a declaration stating that portions of the Prison Litigation Reform Act (PLRA), Sections 6601 to 6608 of the Judicial Code, 42 Pa.C.S. §§ 6601–6608, are unconstitutional. In Count IV, Petitioners seek a declaration that the Department failed to promulgate as a regulation the guidelines for assessing inmate accounts established pursuant to Sections 6602(c) and 6608 of the PLRA, 42 Pa.C.S. §§ 6602(c) and 6608. Finally, in Count V, Petitioners seek a declaration that the Department's retroactive application of Section 9728 of the Judicial Code, 42 Pa.C.S. § 9728, is unconstitutional.

Petitioners' motion for partial summary judgment relates only to Counts III, IV and V of the petition. Respondents' cross-motion relates to all five counts of the petition.[2]

## I. Count I

### A. Legality of DC–ADM 803

■ Respondents argue that they are entitled to judgment as a matter of law with respect to Petitioners' claim that the Department's incoming publications policy, DC–ADM 803, is null and void because it violates Section 5903 of the Obscenity Law. We agree.

DC–ADM 803 provides that the Department's "Incoming Publication Review Committee" shall determine whether an inmate may receive a publication. *See* 37 Pa.Code § 93.2(g)(1). In making that determination, the committee shall consider whether the publication contains obscene material as defined in 18 Pa.C.S. § 5903. *See* 37 Pa.Code § 93.2(g)(3)(iv). Petitioners' claim is that Section 5903 does not authorize the Department to make its own determination as to whether a publication is obscene but, rather, requires an obscenity hearing before an impartial judicial tribunal. (*See* Petitioners' brief in response to cross-motion at 2.)

Section 5903 provides, in pertinent part, as follows:

(a) Offenses defined.—No person, knowing the obscene character of the materials ... involved, shall ...

(7) knowingly take or deliver in any manner any obscene material into a State correctional institution....

---

2. After the pleadings are closed, any party may move for summary judgment in whole or in part as a matter of law (1) whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense which could be established by additional discovery or expert report, or (2) if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which, in a jury trial, would require the issues to be submitted to a jury. Pa. R.C.P. No. 1035.2.

(8) possess any obscene material while such person is an inmate of any State correctional institution. . . .

(9) *knowingly permit any obscene material to enter any State correctional institution . . . if such person is a prison guard or other employee of any correctional facility* described in this paragraph.

(b) Definitions.—As used in this section, the following words and phrases shall have the meanings given to them in this subsection . . .

"Knowing." As used in subsections (a) and (a.1), knowing means having general knowledge of, or reason to know or a *belief* or ground for belief *which warrants further inspection or inquiry of, the character and content of any material or performance described therein which is reasonably susceptible of examination by the defendant*. . . .

"Obscene." Any material . . . if:

(1) the average person applying contemporary community [3] standards would find that the subject matter taken as a whole appeals to the prurient interest;

(2) the subject matter depicts or describes in a patently offensive way, sexual conduct of a type described in this section; [4] and

(3) the subject matter, taken as a whole, lacks serious literary, artistic, political, educational or scientific value.

(g) Injunction.—The attorney for the Commonwealth may institute proceedings in equity in the court of common pleas of the county in which any person violates or clearly is about to violate this section for the purpose of enjoining such violation. The court shall issue an injunction only after written notice and hearing and only against the defendant to the action. The court shall hold a hearing within three days after demand by the attorney for the Commonwealth. . . . The attorney for the Commonwealth shall prove the elements of the violation beyond a reasonable doubt. The defendant shall have the right to trial by jury at the said hearing.

(h) Criminal prosecution.—

(1) Any person who violates subsection (a) . . . is guilty of a *misdemeanor of the first degree*. Violation of subsection (a) is a felony of the third degree if the offender has previously been convicted of a violation of subsection (a) . . . .

(3) Findings made in an equity action shall not be binding in the criminal proceedings.

(Emphasis added.)

We note that, under Section 5903(a)(9), it is a crime for an employee of the Department to "knowingly" permit obscene material to enter a state correctional institution. The statute defines the word "knowing" to include a "belief" that warrants further inspection of the material. In other words, this Section anticipates that, if a Department employee were to believe that a publication contains obscene material, the employee would examine the publication and decide whether to permit delivery of the publication to a prisoner. The employee's failure to inspect the publi-

---

**3.** For purposes of this section, the word "community" means the State. 18 Pa.C.S. § 5903(b).

**4.** "Sexual conduct" is "Patently offensive representations or descriptions of ultimate sexual acts, normal or perverted, actual or simulated, including sexual intercourse, anal or oral sodomy and sexual bestiality; and patently offensive representations or descriptions of masturbation, excretory functions, sadomasochistic abuse and lewd exhibition of the genitals." 18 Pa.C.S. § 5903(b).

cation and to make an individual obscenity determination could result in the employee's conviction of a crime. Thus, the Department's policy, which requires that a committee of employees inspect incoming publications for obscene material, is consistent with the statutory provisions.

Accordingly, Respondents are entitled to judgment as a matter of law on this issue.

## B. Constitutionality of 1998 Amendments

Respondents argue that they are entitled to judgment as a matter of law with respect to Petitioners' claim that the 1998 amendments to Section 5903 are unconstitutional on their face and as applied. We agree.

■ The 1998 amendments added subsections (a)(7), (a)(8) and (a)(9). As previously stated, Section 5903(a)(7) prohibits the knowing delivery of obscene materials to a state correctional institution; Section 5903(a)(8) prohibits the possession of obscene materials by inmates; and Section 5903(a)(9) prohibits an employee from knowingly permitting obscene materials to enter a state correctional institution.

### 1. Facial Challenge

#### a. Free Speech

First, Petitioners claim that the 1998 amendments are unconstitutional because they violate Article I, section 7, of the Pennsylvania Constitution. Article I, sec-

tion 7, provides, in pertinent part, that the "free communication of thoughts and opinions is one of the invaluable rights of man, and every citizen may freely speak, write and print on any subject, being responsible for the abuse of that liberty." Pa. Const., Art. I, § 7.

Petitioners acknowledge that obscenity is not protected by the United States Constitution but, Petitioners argue that, under *William Goldman Theatres, Inc. v. Dana,* 405 Pa. 83, 173 A.2d 59 (1961), *cert denied,* 368 U.S. 897, 82 S.Ct. 174, 7 L.Ed.2d 93 (1961), obscenity is protected by Article I, section 7, of the Pennsylvania Constitution. However, in *William Goldman Theatres,* our Supreme Court held only that Article I, section 7, protects *allegedly* obscene materials from pre-censorship. Here, Section 5903(a)(7) criminalizes the delivery of material that *is* obscene; Section 5903(a)(8) criminalizes the possession of material that *is* obscene;[5] and Section 5903(a)(9) criminalizes permitting the entry of material that *is* obscene into a prison. Because Article I, section 7, does not protect material that *is* obscene, the 1998 amendments, on their face, do *not* violate Article I, section 7, of the Pennsylvania Constitution.

#### b. Possession of Property

■ Second, Petitioners argue that the 1998 amendments violate Article I, section 1, of the Pennsylvania Constitution. Article I, section 1, states that all persons have

---

**5.** Petitioners contend that, under *Stanley v. Georgia,* 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969), a state law criminalizing the private possession of obscene matter violates the First and Fourteenth Amendments to the U.S. Constitution. Petitioners argue that, because the Pennsylvania Constitution cannot provide less free speech protection than the U.S. Constitution, 18 Pa.C.S. § 5903(a)(8) must violate Article I, section 7, of the Pennsylvania Constitution. However, the Court reasoned in *Stanley* that "a State has no busi-

ness telling a man, sitting alone in his own house, what books he may read...." *Stanley,* 394 U.S. at 565, 89 S.Ct. 1243. The "right to receive information and ideas [in the privacy of a person's own home], regardless of their social worth, ... is fundamental to our free society." *Id.* at 564, 89 S.Ct. 1243 (citation omitted). This rationale does not apply to prisoners because a prison does not afford the privacy of a home and does not constitute a free society.

the inherent and indefeasible right to possess property. Pa. Const., Art. I, § 1. However, Petitioners do not have a constitutionally protected property interest in possessing *illegal* obscene materials. Thus, on their face, the 1998 amendments do not violate Petitioners' property rights.

### c. Impairment of Contracts

 Third, Petitioners argue that the 1998 amendments violate Article I, section 17, of the Pennsylvania Constitution. Article I, section 17, states that no law impairing the obligation of contracts shall be passed. Pa. Const., Art. I, § 17. We point out that, in construing Article I, section 17, we must consider that the substantive laws in effect when parties enter into a contract are implicitly incorporated into the contract. *First National Bank of Pennsylvania v. Flanagan*, 515 Pa. 263, 528 A.2d 134 (1987). Thus, here, when Petitioners entered into contracts to receive the publications in question, it was a crime to contract for the sale of obscene materials. *See* 18 Pa.C.S. § 5903(a)(2). Because the 1998 amendments do not impair a *legal* contract, they do not violate the impairment of the contracts clause.

### d. Civil Rights

 Finally, Petitioners argue that the 1998 amendments violate Article I, section 26, of the Pennsylvania Constitution. Article I, section 26, states that the Commonwealth shall not deny to any person the enjoyment of any civil right. Pa. Const., Art. I, § 26. Petitioners claim that one of their civil rights is to receive information from constitutionally protected sources.

(Petition, ¶ 60.) However, if the source of information is an obscene publication, the source is not protected by the Pennsylvania Constitution. Therefore, on their face, the challenged provisions do not violate Article I, section 26.

### 2. As Applied

 Petitioners also claim that the 1998 amendments violate the above provisions of the Pennsylvania Constitution as applied to Petitioners. To refute this allegation, Respondents have placed evidence into the record showing that Respondents withheld the sexually explicit publications from Petitioners because of a governmental concern for prison security and prisoner rehabilitation. (*See* Respondents' brief in support of cross-motion at 15; Exh. 5, Nos. 7–10, 13.) Respondents' evidence shows that, after the Department implemented its new publication policy, the incidence of assault and sexual misconduct declined significantly.[6] In their brief, Petitioners deny that there is any connection between sexually explicit material and prison security or prisoner rehabilitation. (*See* Petitioners' brief in response to cross-motion at 5–8.) However, Petitioners' mere denial is not sufficient to defeat Respondents' motion for summary judgment and attendant affidavits.

Rule 1035.3 of the Pennsylvania Rules of Civil Procedure states that, in response to a motion for summary judgment, an adverse party may not rest upon the mere allegations or denials of the pleadings. Pa. R.C.P. No. 1035.3(a). The adverse party must identify (1) one or more issues

---

**6.** Respondents' evidence shows that, for the eleven-month period from August 1997 to September 1998, the Department issued 242 "misconducts" for assault per month. (*See* Respondents' brief in support of cross-motion, Exh. 5, No. 7; dividing 2562 total assaults by eleven months.) For the twenty-three month period from October 1998 to September 2000, after the Department implemented its new publication policy, the Department issued only 174.2 "misconducts" for assault per month. (*See* Respondents' brief in support of cross-motion, Exh. 5, No. 8; dividing 4010 total assaults by twenty-three months.)

of fact "arising from evidence in the record" controverting the evidence cited in support of the motion for summary judgment, or (2) evidence in the record establishing the facts essential to the cause of action or defense which the motion cites as not having been produced. Pa. R.C.P. No. 1035.3(a). "An adverse party may supplement the record or set forth the reasons why the party cannot present evidence essential to justify opposition to the motion and any action proposed to be taken by the party to present such evidence." Pa. R.C.P. No. 1035.3(b).

Here, Petitioners have not identified any evidence in the record controverting Respondents' evidence, *i.e.*, establishing that there is no connection between sexually explicit materials and prison security or prisoner rehabilitation. Although Petitioners have presented argument in their brief, Petitioners have not supplemented the record with evidence to support their argument. Moreover, Petitioners have not set forth any reason why Petitioners could not present evidence in opposition to Respondents' motion.

Accordingly, Respondents are entitled to summary judgment on this issue.

## II. Count II

Respondents also argue that they are entitled to judgment as a matter of law with respect to Petitioners' claim that DC–ADM 803 must be promulgated as a regulation. However, the Department has now promulgated DC–ADM 803 as a regulation. (*See* Petitioners' brief in response to cross-motion at 8; *see also* 37 Pa.Code § 93.2(g).) Therefore, the matter is moot.

## III. Count III

■ Petitioners and Respondents each argue that they are entitled to summary judgment with respect to the claim that portions of Sections 6601 to 6608 of the PLRA are unconstitutional. Petitioners contend that some of these sections usurp our Supreme Court's exclusive power to prescribe rules of practice and procedure for Pennsylvania courts.[7]

Article V, section 10(c), of the Pennsylvania Constitution states that the "Supreme Court shall have the power to prescribe general rules governing practice, procedure and the conduct of all courts.... [8] *All laws shall be suspended to the extent that they are inconsistent with rules prescribed under these provisions.*" Pa. Const., Art. V, § 10(c) (emphasis added); *see also* Section 1722 of the Judicial Code, 42 Pa.C.S. § 1722 (vesting in the Supreme Court procedural rulemaking authority).

### A. Sections 6602(a) to (c)

Sections 6602(a) to (c) of the PLRA provides rules for in forma pauperis status in matters concerning prison conditions litigation.[9] Section 6602(a)-(c) states:

---

**7.** Petitioners also argue that the PLRA interferes with prior final judgments of the judicial branch of government. (*See* Petitioners' brief in support of motion for partial summary judgment at 12.) However, Petitioners have not alleged, and have presented no evidence to show, that the PLRA has interfered with any prior final judgment of a court of this Commonwealth.

**8.** Article V does *not* give the General Assembly such power. Article V gives the General Assembly the power to (1) establish classes of magisterial districts and fix salaries for the justices of the peace in each class, Art. V, § 7; (2) establish additional courts or divisions of courts and to abolish existing courts or divisions of courts, Art. V, § 8; (3) establish the number and boundaries of judicial districts and to change them with the advice and consent of the Supreme Court, Art. V, § 11; and (4) establish compensation for justices, judges, and justices of the peace, Art. V, § 16.

**9.** Prison condition litigation is defined as:

(a) Prisoner filing requirements.—(1) A prisoner seeking to bring prison conditions litigation without the prepayment of fees or security due to indigency must submit a request to the court to proceed without the prepayment of fees. . . .

(b) Partial filing fees.—(1) The court may grant in forma pauperis status to excuse the prisoner from paying the full filing fee prior to the initiation of the action or appeal. Where in forma pauperis status is granted, the court shall order the prisoner to pay the full amount of the filing fee and shall assess and, when funds exist, collect a full or partial payment of the filing fee. . . . (2) The court shall send a copy of the assessment order to the prisoner, the parties to the action and the prison having custody of the prisoner. The court may also direct upon condition of maintaining the action that the prisoner make a written request to the prison officials to deduct payments required by the court. . . .

(c) Payment of filing fees.—Following payment of an initial partial filing fee, the prisoner shall make monthly payments of 20% of the preceding month's income credited to the prisoner's account. . . .

However, Pa. R.C.P. No. 240, which "applies to all civil actions and proceedings except actions pursuant to the Protection From Abuse Act," states in subsection (f) that a "party permitted to proceed in forma pauperis shall not be required to (1) pay any cost or fee imposed or authorized by Act of Assembly or general rule which is payable to any court or prothonotary or any public officer or employee. . . ." Under Sections 6602(a) to (c) of the PLRA, a prisoner proceeding in forma pauperis must pay the filing fee, although it can be paid in installments. We conclude that the absolute prohibition, in prison conditions litigation matters, against allowing an inmate to litigate without paying a filing fee directly contradicts Rule 240(f) and the Supreme Court's rulemaking authority.

Accordingly, Petitioners are entitled to judgment as a matter of law on this issue and Respondents' cross motion is denied. To the extent that this Court has already ordered payments as yet not fully collected or have actually collected payments in total from individuals under Sections 6602(a) to (c), the relief we grant shall be prospective only.[10]

## B. Section 6602(e)

Section 6602(e) of the Judicial Code provides rules for the dismissal of prison conditions litigation.

A civil proceeding arising in whole or in part under Federal or State law with respect to the conditions of confinement or the effects of actions by a government party on the life of an individual confined in prison. The term includes an appeal. The term does not include criminal proceedings or habeas corpus proceedings challenging the fact or duration of confinement in prison.

Respondents' evidence also shows that, for the eleven-month period from August 1997 to September 1998, the Department issued fifty-two "misconducts" for sex-related behavior per month. (See Respondents' brief, Exh. 5, No. 9; dividing 572 total sex-related charges by eleven.) For the twenty-three month period from October 1998 to September 2000, after the Department implemented its new publication policy, the Department issued only 40.2 "misconducts" for sex-related behavior per month. (See Respondents' brief, Exh. 5, No. 10; dividing 926 total sex-related charges by twenty-three.) 42 Pa.C.S. § 6601.

10. See, e.g., Ormes v. Department of Public Welfare, 98 Pa.Cmwlth. 588, 512 A.2d 87, 89 n. 5 (1986) (applying holding prospectively where Court struck regulation regarding appeal rights).

(e) Dismissal of litigation.—Notwithstanding any filing fee which has been paid, *the court shall dismiss prison conditions litigation at any time, including prior to service on the defendant,* if the court determines ... [that the] prison conditions litigation is frivolous or malicious or fails to state a claim upon which relief may be granted or the defendant is entitled to assert a valid affirmative defense, including immunity, which, if asserted, would preclude the relief....

(Emphasis added.)

 Petitioners contend that this Section usurps our Supreme Court's exclusive power to prescribe rules of practice and procedure for Pennsylvania courts, and is, therefore, unconstitutional. A statute must be shown to clearly, palpably and plainly violate the Constitution before it can be declared unconstitutional. *Wajcrt v. State Ethics Commission,* 491 Pa. 255, 262 n. 6, 420 A.2d 439, 442 n. 6 (1980). Further, our rules of statutory construction make clear that the General Assembly does not intend to violate the Constitutions of the United States or this Commonwealth when enacting legislation. Section 1922(3) of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1922(3). Thus, where a constitutional interpretation of legislation is possible, such an interpretation is favored.

The Pennsylvania Rules of Civil Procedure provide, in Pa. R.C.P. No. 240(j):

If, simultaneous with the commencement of an action or proceeding of the taking of an appeal, a party has filed a petition for leave to proceed in forma pauperis, the court prior to acting upon the petition may dismiss the action, proceeding or appeal if the allegation of poverty is untrue or if it is satisfied that the action, proceeding or appeal is frivolous.

Note: A frivolous action or proceeding has been defined as one that "lacks an arguable basis either in law or in fact." *Neitzke v. Williams,* 490 U.S. 319, 109 S.Ct. 1827[, 104 L.Ed.2d 338] ... (1990).

Further, the Official Note to the Rule recognizes the problems attendant to judicial administration which are due to the filing of numerous meritless complaints where in forma pauperis status is sought. The Official Note also observes, citing to *Robinson v. Pennsylvania Board of Probation and Parole,* 525 Pa. 505, 582 A.2d 857 (1990), that Pennsylvania has adopted a definition of "frivolous" that is virtually identical to the one stated in *Neitzke.*

If Section 6602(e) of the PLRA is construed to apply *only* to those prison conditions cases where in forma pauperis status is sought, the provision is then analogous to and not in conflict with Rule 240(j). Since a constitutional interpretation is favored, we will so construe Section 6602(e).

We, thus, deny Petitioners' motion as to this issue and grant Respondents' motion.

### C. Section 6602(f)

 Section 6602(f) of the Judicial Code provides a rule for the dismissal of prison conditions litigation based on a finding of abusive litigation.

(f) Abusive litigation.—If the prisoner has previously filed prison conditions litigation and: (1) three or more of these prior civil actions have been dismissed pursuant to subsection (e)(2); or (2) the prisoner has previously filed prison conditions litigation against a person named as a defendant in the instant action or a person serving in the same official capacity as a named defendant and a court made a finding that the prior action was filed in bad faith or that the prisoner knowingly presented false evidence or testimony at a hearing or trial; the court **may** dismiss the action. The court

shall not, however, dismiss a request for preliminary injunctive relief or a temporary restraining order which makes a credible allegation that the prisoner is in imminent danger of serious bodily injury.

(Emphasis added.) Petitioners contend that this provision encroaches on the discretionary powers reserved only to the judiciary. However, in our view, the three strikes provision is analogous to a jurisdictional hurdle that one seeking in forma pauperis status in a prison conditions litigation case needs to overcome. For example, the legislature has certainly provided that one has to be aggrieved to appeal and has established what is, in essence, a jurisdictional hurdle in such an instance. *See, e.g.,* Section 702 the Administrative Agency Law, 2 Pa.C.S. § 702 ("Any person aggrieved by an adjudication of a Commonwealth agency who has a direct interest in such adjudication shall have the right to appeal therefrom. . . ."); Section 752 of the Local Agency Law, 2 Pa.C.S. § 752 ("Any person aggrieved by an adjudication of a local agency who has a direct interest in such adjudication shall have the right to appeal therefrom. . . .") Additionally, the three-strikes provision *permits,* by the use of the term "may" as emphasized above, but does not *compel,* a court to dismiss abusive litigants' cases.[11] Thus, because the power of dismissal remains a discretionary act that continues to be vested in the judiciary, we conclude that this provision does not present a separation of powers problem.

Petitioners' motion is, therefore, denied as to this claim and Respondents' motion is granted.

11. "May" is ordinarily permissive. *Jennison Family Limited Partnership v. Montour School*

### D. Section 6605(a)

Section 6605(a) of the Judicial Code governs temporary restraining orders and preliminary injunctions in prison conditions litigation and states:

> In prison conditions litigation, the court may, to the extent authorized by law, enter a temporary restraining order or preliminary injunction. *A preliminary injunction shall automatically expire 90 days after its entry* unless the court makes the findings required under section 6604 (relating to prospective relief) for the entry of prospective relief and makes the order final before the expiration of the 90–day period.

(Emphasis added.) Pa. R.C.P. No. 1531 governs preliminary injunctions in civil actions. It states, "Any party may move at any time to dissolve an injunction." Pa. R.C.P. No. 1531(c). In addition, Rule 1531 indicates that a preliminary injunction may be dissolved or deemed dissolved under appropriate circumstances. *See* Pa. R.C.P. Nos. 1531(d), (e) and (f). However, Rule 1531 does *not* provide for automatic dissolution after ninety days. Nonetheless, we do not construe Section 6605(a) of the PLRA and Rule 1531 to be in conflict. The PLRA merely mandates that findings be made in order to support what is essentially a cause of action for injunctive relief in excess of ninety days. This provision in no way precludes or restrains the court in its factfinding power or in imposing a remedy supported by the facts.

Accordingly, Petitioners are not entitled to judgment as a matter of law on this issue and judgment is granted in favor of Respondents.

*District,* 802 A.2d 1257 (Pa.Cmwlth.2002).

## IV. Count IV

Petitioners and Respondents each argue that they are entitled to summary judgment with respect to Petitioners' claim that the Department is required to promulgate as regulations the written guidelines referenced in Sections 6602(c)[12] and 6608 of the Judicial Code. Having determined that Section 6602(c) of the PLRA, relating to in forma pauperis status, is unconstitutional, we shall consider only whether the Department should have promulgated regulations with respect to the guidelines referenced in Section 6608.

Section 6608 of the Judicial Code provides as follows:

Monetary damages awarded to a prisoner in connection with prison conditions litigation or paid in settlement of prison conditions litigation which is payable from funds appropriated by the General Assembly or by a political subdivision or an insurance policy purchased by the Commonwealth or political subdivision shall first be used to satisfy any outstanding court orders requiring the prisoner to pay restitution, costs, bail, judgments, fines, fees, sanctions or other court-imposed amounts in connection with a criminal prosecution or sentence. Upon receipt of a copy of an outstanding court order, the government party or person designated by the government party shall deduct the full amount owed from the remaining moneys and arrange

to pay it directly to the person or entity owed in accordance with Pennsylvania law. Where the amount of outstanding court orders exceeds the monetary damage award or settlement, the government party shall notify the parties owed of the intended distribution of the amounts. Any person or entity owed who objects to the proposed distribution may seek a court order compelling a different distribution. Any remainder of a monetary damage award shall be used to satisfy any amount owed to a government party, including a judgment or any other costs and fees assessed against or imposed upon the prisoner, including, but not limited to, costs for medical services, incarceration and destruction of property. The *procedures for such assessment shall be set forth by the prison in written policy and procedure* ....

(Emphasis added.)

Based on the plain language of Section 6608, we conclude that the Department is *not* required to promulgate its assessment policy and procedure as a regulation. Even if we were to conclude otherwise, we note that the Department's policy and procedure, for the most part, simply reiterates the language of the statute. (*See* Respondents' brief in support of cross-motion, Exh. 6 at 4.) Thus, if we were to invalidate the Department's policy and procedure, it would have no effect because the statutory provisions still would apply.[13]

---

**12.** Section 6602(c) of the Judicial Code provides as follows:

(c) Payment of filing fees.—Following payment of an initial partial filing fee [following the grant of in forma pauperis status], the prisoner shall make monthly payments of 20% of the preceding month's income credited to the prisoner's account. The prison having custody of the prisoner shall deduct payments from the prisoner's account when the prisoner's account balance exceeds $10 until the filing fees are paid in

full.... The Department of Corrections ... *shall develop written guidelines regarding the priority of payment, which shall be consistent with law.*
42 Pa.C.S. § 6602(c) (emphasis added).

**13.** In their brief, Petitioners also argue that the guidelines developed by the Department pursuant to Section 9728(b) of the Judicial Code should have been promulgated as regulations. (Petitioners' brief in support of partial motion for summary judgment at 14, 16.) However, Petitioners do not address the Sec-

Accordingly, Respondents are entitled to judgment as a matter of law with respect to Count IV and Petitioners' motion is denied.

## V. Count V

■ Petitioners and Respondents each argue that they are entitled to summary judgment with respect to Petitioners' claim that the Department's retroactive application of Section 9728 of the Judicial Code, 42 Pa.C.S. § 9728, violates the Pennsylvania Constitution and/or Section 1926 of the Statutory Construction Act of 1972, 1 Pa. C.S. § 1926.[14] In *Sweatt v. Department of Corrections*, 769 A.2d 574 (Pa.Cmwlth. 2001), this Court held that Section 9728 does not involve an impermissible retroactive application of the law. We explained that the provision is not penal in nature but, rather, provides a procedural mechanism for the Department to collect court costs and fines that the inmate owes. *See Sweatt.* That case controls on this issue and we believe that it was correctly decided.

Accordingly, Respondents are entitled to judgment as a matter of law with respect to Count V and Petitioners' motion is denied.

## ORDER

**NOW,** December 5, 2002, we hereby order as follows:

1. With respect to Count I of the Petition for Review (Petition), Respondents' cross-motion for summary judgment is granted.

2. Count II of the Petition is dismissed as moot.

3. With respect to Count III, Petitioners' motion for summary judgment is granted in part and denied in part as set forth in the foregoing opinion. The relief granted to Petitioners shall take effect in thirty days and shall be prospective only.

4. With respect to Count IV, Petitioners' motion for summary judgment is denied, and Respondents' cross-motion is granted.

5. With respect to Count V, Petitioners' motion for summary judgment is denied, and Respondents' cross-motion is granted.

## CONCURRING AND DISSENTING OPINION BY Judge PELLEGRINI.

While I agree with the majority as to Counts I, II and IV, I disagree with the majority's conclusion as to one portion of Count III, specifically, that John M. Payne, Paul Nolder, Frank Grazulis, Charles Lee, Richard Guy and all others similarly situated (Petitioners) are entitled to judgment as a matter of law as to their allegations regarding Sections 6602(a) through (c) of the Judicial Code, 42 Pa.C.S. §§ 6602(a)—(c),[1] requiring that prisoners

---

tion 9728(b) guidelines in their Petition. Therefore, we will not consider the matter further.

14. Section 1926 states, "No statute shall be construed to be retroactive unless clearly and manifestly so intended by the General Assembly."

1. Those sections provide:
 (a) Prisoner filing requirements.—
 (1) A prisoner seeking to bring prison conditions litigation without the prepay-

ment of fees or security due to indigency must submit a request to the court to proceed without the prepayment of fees. The request must include a certified copy of the prisoner's prison account statement, which shall be provided by the prison, for the six-month period immediately preceding the filing of the complaint or notice of appeal. The request shall include a statement of any other assets of the prisoner.
 (2) The court shall deny in forma pauperis status to any prisoner where:

pay filing fees when they have money to pay those fees.

In Section III(A) of its opinion, the majority concludes that Petitioners are entitled to judgment as a matter of law regarding their claim arising under Sections 6602(a)—(c) of the Judicial Code which provides that prisoners proceeding *in forma pauperis* be excused from paying the full filing fee prior to the initiation of the action or appeal, but requires prisoners to pay the full amount of the filing fee when funds exist. Granting Petitioners' request for judgment as a matter of law, the majority opines that because Pa. R.C.P. No. 240(f) provides that a party proceeding *in forma pauperis* shall not be required to pay any cost or fee payable to any court or prothonotary or any public officer or employee, and Article V, Section 10(c) of the Pennsylvania Constitution provides that all laws shall be suspended to the extent they are inconsistent with rules prescribed by

our Supreme Court governing the practice, procedure and conduct of all the courts, Sections 6602(a)—(c) of the Judicial Code are invalid.

However, filing fees are not normally considered to encompass "the practice, procedure and conduct of all the courts." Filing fees are considered a part of the budgetary process funding the operation of the Commonwealth and funding of the courts. In fact, the General Assembly retains authority over filing fees in that it establishes all of the fees and charges required in conjunction with actions filed within the Commonwealth, 42 Pa.C.S. § 1725, as well as other filing fees that are collected as part of the court process to fund other operations. *See e.g.* 23 Pa.C.S. § 2505 (filing fees paid in conjunction with report of intention to adopt used to provide counseling free of charge to those who cannot afford such counseling); Section 802 of the Liquor Code, Act of April 12,

(i) the request is not accompanied by a certified copy as provided in paragraph (1);

(ii) the average monthly deposits or average highest monthly balance for the six-month period preceding the filing of the action exceeds the amount of the filing fee; or

(iii) other grounds exist for the denial of in forma pauperis status pursuant to the Pennsylvania Rules of Civil Procedure.

(b) Partial filing fees.—

(1) The court may grant in forma pauperis status to excuse the prisoner from paying the full filing fee prior to the initiation of the action or appeal. Where in forma pauperis status is granted, the court shall order the prisoner to pay the full amount of the filing fee and shall assess and, when funds exist, collect a full or partial payment of the filing fee which shall be the greater of the following:

(i) The average monthly deposits to the prisoner's account.

(ii) The average highest monthly balance in the prisoner's account for the six-month period immediately preceding the filing of the complaint or notice of appeal requiring the payment of a fee.

(2) The court shall send a copy of the assessment order to the prisoner, the parties to the action and the prison having custody of the prisoner. The court may also direct upon condition of maintaining the action that the prisoner make a written request to the prison officials to deduct payments required by the court.

(3) The court may modify the assessment order for cause.

(c) Payment of filing fees.—Following payment of an initial partial filing fee, the prisoner shall make monthly payments of 20% of the preceding month's income credited to the prisoner's account. The prison having custody of the prisoner shall deduct payments from the prisoner's account when the prisoner's account balance exceeds $10 until the filing fees are paid in full. The prison shall forward to the prothonotary the deducted payments upon deduction, on a monthly basis, or upon complete payment of the full filing fee if the court so directs. The Department of Corrections and county prison systems shall develop written guidelines regarding the priority of payment, which shall be consistent with law.

1951, P.L. 90, *as amended,* 47 P.S. § 8–802 (fees generated by the Liquor Code paid into The State Stores Fund, and, in part, turned over to the Department of Health for use by Office of Drug and Alcohol Programs). What would make a filing fee unconstitutional is if it totally denied a prisoner's access to courts because he could not pay the fee.[2]

Here, the provision at issue merely recognizes that a prisoner seeking to proceed *in forma pauperis* is not necessarily on even ground with other private individuals seeking to file a civil claim, because prisoners do not face the same financial burden that other individuals may face; prisoners, unlike others, are provided with room, board and medical expenses as well as other basic needs by the Commonwealth.

Based on those reasons and because filing fees are a budgetary concern, I do not believe that requiring a prisoner to pay filing fees when funds exist to pay them is violative of the separation of powers or our Constitution.[3]

Accordingly, while I join in the majority's disposition of Counts I, II and IV, I respectfully dissent as to Count III(A).

Judge LEAVITT joins in this concurring and dissenting opinion.

## CONCURRING AND DISSENTING OPINION BY Judge FRIEDMAN.

I agree with Parts I, II, IV and V of the majority opinion. However, I respectfully dissent with respect to Parts III(B), III(C) and III(D) of the majority opinion. I also

**2.** Judge Friedman, in her concurring and dissenting opinion, states that the necessary implication that court filing fees are part of the budgetary process are within the purview of the General Assembly necessarily means that our Supreme Court has usurped the function of the General Assembly when it promulgated Rule 240(f) allowing for a party to proceed *in forma pauperis.* What that position ignores is that Rule 240(f) is not a budgetary rule or, for that matter, one that flows from Article V, Section 10(c) of the Pennsylvania Constitution, but merely enforces the right that no citizen of this Commonwealth shall be denied access to the courts due to lack of financial resources to pay the costs of litigation. *See Denton v. Hernandez,* 504 U.S. 25, 112 S.Ct. 1728, 118 L.Ed.2d 340 (1992); *Brady v. Ford,* 451 Pa.Super. 363, 679 A.2d 837 (1996). 42 Pa.C.S. §§ 6602(a)-(c) do not impinge on the Supreme Court's right to prescribe general rules or Rule 240(f) because they merely recognize that all inmates are provided with all the necessities of life; if the inmate has money in his or her prison account to use to pay filing fees, filing fees should be charged. Non-inmate litigants are required to make the choice of spending their money on litigation and so should inmates when they have money in their accounts to pay costs. Moreover, not only does it not violate Rule 240(f), it is in accord with Rule 240(h), which requires a statement that the petitioner is "unable to obtain funds from anyone, including my family and associates, to pay the costs of litigation." If an inmate has the funds in his prison account, then he cannot make that statement and is not entitled to *in forma pauperis* status.

**3.** In 1995, Congress passed the federal Prisoner Litigation Reform Act of 1995, Pub.L. No. 104–134, 110 Stat. 1321 (1996), the provisions of which numerous states have followed in enacting their own Prisoner Litigation Reform acts. The constitutionality of the federal Act has been challenged and upheld on numerous occasions. *See Singleton v. Smith,* 241 F.3d 534 (6th Cir.2001); *Rodriguez v. Cook,* 169 F.3d 1176 (9th Cir.1999); *Murray v. Dosal,* 150 F.3d 814 (8th Cir.1998), *cert. denied,* 526 U.S. 1070, 119 S.Ct. 1467, 143 L.Ed.2d 551 (1999); *Nicholas v. Tucker,* 114 F.3d 17 (2nd Cir.1997), *cert. denied,* 523 U.S. 1126, 118 S.Ct. 1812, 140 L.Ed.2d 950 (1998). Also, numerous states have upheld similar provisions. *See Gomez v. Evangelista,* 290 A.D.2d 351, 736 N.Y.S.2d 365 (2002); *Longval v. Superior Court Department of Trial Court,* 434 Mass. 718, 752 N.E.2d 674 (2001); *Brandon v. Corrections Corp. of America,* 28 P.3d 269 (Alaska 2001); *State ex rel. Adell v. Smith,* 247 Wis.2d 260, 633 N.W.2d 231 (Wis. App.2001); *Harris v. Munoz,* 6 S.W.3d 398 (Mo.App. W.D.1999).

disagree with the dissenting view of Judge Pellegrini with respect to Part III(A) of the majority opinion.

## I. Majority Opinion

### A. Section 6602(e)

In Part III.B, the majority holds that section 6602(e) of the Judicial Code[1] is *not* inconsistent with the rules of civil procedure prescribed by the Pennsylvania Supreme Court pursuant to Article V, section 10(c) of the Pennsylvania Constitution.[2] (813 A.2d at 928.) I disagree.

Section 6602(e) of the Judicial Code provides rules for the *sua sponte* dismissal of prison conditions litigation even where the litigant has paid the proper filing fee.

> (e) Dismissal of litigation.—*Notwithstanding any filing fee which has been paid,* the court shall dismiss prison conditions litigation at any time, including prior to service on the defendant, if the court determines ... [that the] prison conditions litigation is frivolous or malicious or fails to state a claim upon which relief may be granted or the defendant is entitled to assert a valid affirmative defense, including immunity, which, if asserted, would preclude the relief....

42 Pa.C.S. § 6602(e) (emphasis added).

First, Rule 1028 of the Pennsylvania Rules of Civil Procedure does not allow a court to consider *sua sponte* whether a complaint fails to state a claim upon which relief may be granted. Rule 1028 requires that an opposing party file preliminary objections alleging that a complaint fails to state a claim upon which relief may be granted. *See* Pa. R.C.P. No. 1028(a)(4).

**The majority does not discuss whether this aspect of section 6602(e) of the Judicial Code is inconsistent with the rules prescribed by our supreme court.**

Second, Rule 1030 of the Pennsylvania Rules of Civil Procedure does not allow a court to consider *sua sponte* whether there is a valid affirmative defense to a claim. Rule 1030 requires that an affirmative defense be pleaded in a responsive pleading under the heading "New Matter." *See* Pa. R.C.P. No. 1030(a). **The majority does not discuss whether this aspect of section 6602(e) of the Judicial Code is inconsistent with the rules prescribed by our supreme court.**

Third, *no* rule prescribed by our supreme court allows a court to dismiss *sua sponte* a complaint as frivolous or malicious where the litigant has paid the appropriate filing fee. Indeed, our supreme court has stated that, when a party has paid the required filing fee, that party has "activated the judicial machinery of the Commonwealth." *Boyle v. O'Bannon,* 500 Pa. 495, 498, 458 A.2d 183, 185 (1983).

> There are no special rules that apply to lawsuits which, upon private examination, a judge or panel of judges may regard as frivolous. *Our system of justice does not include a judicial minister of undesirable lawsuits* whose function it is to review all suits as they are filed, and whose powers include arbitrary and summary dismissal of those filings deemed to be frivolous, or otherwise without merit.

> Whether the appellant's averments are sufficient to allege a cause of action is not the question; and, if a cause of

---

1. 42 Pa.C.S. § 6602(e).

2. Pa. Const., Art. V., § 10(c). "All laws shall be suspended to the extent that they are inconsistent with rules prescribed under these provisions [the provisions of Article V, section

10(c) of the Pennsylvania Constitution]." *Id.* Thus, any statute that conflicts with the Pennsylvania Rules of Civil Procedure is invalid under this constitutional provision.

action is stated, the appellant's ability to prove his allegations by competent evidence likewise is not the point. The fundamental issue is the appellant's right to due process of law.... *The precipitate abortion of appellant's embryonic lawsuit before service of process, without appearance by the defendant, and without proper motion and hearing is repugnant to traditional notions of justice and fair play, and conflicts with the due process requirements of the United States Constitution and The Pennsylvania Constitution.*

There is no rule of civil procedure which authorizes a court to arbitrarily deny a litigant service of process of a complaint lawfully filed. If a court could decide summarily which lawsuits are worthy of service and which are not, we would be *on the threshold of judicial tyranny.* The law cannot sanction a court ignoring procedural rules and arbitrarily dismissing a plaintiff's complaint absent service of process and an opportunity for the plaintiff to be heard.... *Despotic governmental action of this sort cannot be countenanced in a democracy.*

*Id.* at 498–99, 458 A.2d at 185 (citations omitted, footnotes omitted, emphasis added). In other words, not only is section 6602(e) of the Judicial Code in conflict with the rules of civil procedure prescribed by our supreme court, section 6602(e) of the Judicial Code violates the due process rights of litigants who have paid a proper filing fee.

**3.** This court may presume that the legislature does not intend to violate the constitution. Section 1922(3) of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1922(3). However, when the language of a statute obviously violates the constitution, this court has no power to re-write a statute or delete the offending language.

The majority addresses only whether section 6602(e) of the Judicial Code conflicts with Rule 240(j) of the Pennsylvania Rules of Civil Procedure, which allows a court to dismiss an action if the litigant has filed a petition for leave to proceed in forma pauperis and the court is satisfied that the action is frivolous. Pa. R.C.P. No. 240(j). In other words, Rule 240(j) applies only to litigation initiated by a litigant who has *not* paid the required filing fee. The majority then interprets section 6602(e) so that it applies only to prison conditions litigation initiated by a litigant who has *not* paid the required filing fee. (813 A.2d at 927.) However, such a construction ignores the plain language of section 6602(e) of the Judicial Code, which explicitly applies "[n]otwithstanding any filing fee which has been paid...." 42 Pa.C.S. § 6602(e). When the words of a statute are clear and free from ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit.[3] Section 1921(b) of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1921(b).

Unlike the majority, I would hold that Petitioners are entitled to judgment as a matter of law on this issue.

### B. Section 6602(f)

In Part III.C, the majority holds that section 6602(f) of the Judicial Code[4] is *not* inconsistent with the rules of court prescribed by the Pennsylvania Supreme Court under Article V, section 10(c) of the Pennsylvania Constitution. (813 A.2d at 927–28.) I disagree.

Moreover, I cannot comprehend how the words "[n]otwithstanding any filing fee which has been paid" can mean "where no filing has been paid." I submit that such an interpretation is absurd. *See* Section 1922(1) of the Statutory Construction Act of 1972, 1 Pa. C.S. § 1922(1).

**4.** 42 Pa.C.S. § 6602(f).

Section 6602(f) of the Judicial Code provides a rule for the dismissal of prison conditions litigation based on a finding of abusive litigation.

> (f) Abusive litigation.—If the prisoner has previously filed prison conditions litigation and: (1) three or more of these prior civil actions have been dismissed pursuant to subsection (e)(2); or (2) the prisoner has previously filed prison conditions litigation against a person named as a defendant in the instant action or a person serving in the same official capacity as a named defendant and a court made a finding that the prior action was filed in bad faith or that the prisoner knowingly presented false evidence or testimony at a hearing or trial; the court may dismiss the action. The court shall not, however, dismiss a request for preliminary injunctive relief or a temporary restraining order which makes a credible allegation that the prisoner is in imminent danger of serious bodily injury.

42 Pa.C.S. § 6602(f). Quite simply, the rules prescribed by our supreme court do not allow a court to dismiss a case based on a party's prior litigation. Thus, unlike the majority, I would conclude that section 6602(f) of the Judicial Code is inconsistent with the rules of court and that Petitioners are entitled to judgment as a matter of law on this issue.

In reaching a contrary conclusion, the majority states that section 6602(f) of the Judicial Code "is analogous to a jurisdictional hurdle which one seeking in forma pauperis ·status in a prison conditions litigation case needs to overcome." (813 A.2d at 927–28.) I recognize that the legislature has authority under the Pennsylvania Constitution to establish the jurisdiction of the courts. *See* Article V of the Pennsylvania Constitution. However, I do not agree that the abusive litigation provision in section 6602(f) of the Judicial Code establishes a jurisdictional requirement.[5]

Jurisdiction is a question of law involving a determination as to a court's right to proceed with litigation. 20 Am.Jur.2d *Courts* § 54 (1995).

> There are three separate elements to the jurisdiction of a court: (1) jurisdiction over the person, (2) jurisdiction over the subject matter, and (3) jurisdiction to render the particular judgment sought, or, as is sometimes said, jurisdiction of the particular case.

*Id.* (footnotes omitted). Here, there can be no question that this court has (1) jurisdiction over prisoners incarcerated in Commonwealth prisons, (2) jurisdiction over prison conditions litigation, and (3) jurisdiction to render a judgment in such cases. *See Jackson v. Hendrick,* 764 A.2d 1139 (Pa.Cmwlth.2000), *appeal denied,* 566 Pa. 671, 782 A.2d 550 (2001). In fact, section 6602(f) of the Judicial Code assumes that the party initiating the prison conditions litigation has brought similar actions before the court that were *not* dismissed for lack of jurisdiction.

To justify its view of section 6602(f) as a jurisdictional hurdle, the majority compares section 6602(f) with two statutory provisions requiring that a party filing an appeal must be aggrieved. (813 A.2d at 928.) However, being aggrieved is not a jurisdictional requirement; being aggrieved pertains to a party's *standing* to file an appeal.[6] In Pennsylvania, standing

---

**5.** If the abusive litigation requirement is merely "analogous to" jurisdiction, I point out that the majority cites no provision of the Pennsylvania Constitution authorizing the legislature to impose requirements on the courts that are "analogous to" jurisdiction.

**6.** The core concept of standing is that a person who is not adversely affected in any way

is *not* a jurisdictional question.[7] *See Housing Authority v. Pennsylvania State Civil Service Commission,* 556 Pa. 621, 730 A.2d 935 (1999). Thus, I cannot accept the majority's reasoning.

### C. Section 6605(a)

In Part III.C, the majority holds that section 6605(a) of the Judicial Code [8] is *not* inconsistent with the rules of court prescribed by the Pennsylvania Supreme Court under Article V, section 10(c) of the Pennsylvania Constitution. (813 A.2d at 828.) I disagree.

Section 6605(a) of the Judicial Code governs temporary restraining orders and preliminary injunctions in prison conditions litigation.

> In prison conditions litigation, the court may, to the extent authorized by law, enter a temporary restraining order or preliminary injunction. *A preliminary injunction shall automatically expire 90 days after its entry* unless the court makes the findings required under section 6604 (relating to prospective relief) for the entry of prospective relief and makes the order final before the expiration of the 90–day period.

42 Pa.C.S. § 6605(a) (emphasis added). Rule 1531(c) of the Pennsylvania Rules of Civil Procedure, which governs preliminary injunctions in civil actions, states, "Any party may move at any time to dissolve an injunction." Pa. R.C.P. No. 1531(c). In addition, Rule 1531 states that a preliminary injunction may be dissolved

or deemed dissolved under appropriate circumstances. *See* Pa. R.C.P. Nos. 1531(d), (e) and (f). However, Rule 1531 does *not* provide for automatic dissolution of an injunction after ninety days under *any* circumstances. Therefore, I would conclude that section 6605(a) of the Judicial Code is inconsistent with Rule 1531 and that Petitioners are entitled to judgment as a matter of law on this issue.

The majority finds no inconsistency between section 6605(a) of the Judicial Code and Rule 1531 because the statutory provision "merely mandates that findings be made in order to support what is essentially a cause of action for injunctive relief in excess of ninety days." (813 A.2d 828.) However, Rule 1531 does *not* require that a court make certain findings in order to continue a preliminary injunction beyond a ninety-day period. Therefore, section 6605(a) of the Judicial Code is inconsistent with Rule 1531 and should be suspended.

### II. Concurring/Dissenting Opinion

In his concurring and dissenting opinion, Judge Pellegrini does not agree with the majority that sections 6602(a) to (c) of the Judicial Code [9] are inconsistent with Rule 240(f) of the Pennsylvania Rules of Civil Procedure. I am in agreement with the majority on this issue. The statute provides that prisoners proceeding in forma pauperis in prison conditions litigation must pay filing fees "when funds exist." 42 Pa.C.S. § 6602(b)(1). However, Rule

---

by the matter challenged is not aggrieved thereby and has no standing to obtain a judicial resolution of the challenge. *Wm. Penn Parking Garage, Inc. v. City of Pittsburgh,* 464 Pa. 168, 346 A.2d 269 (1975).

7. In the federal courts, standing is a jurisdictional question; however, in Pennsylvania, it is not. *See Housing Authority.* Thus, it ap-

pears to me that the majority is relying on an irrelevant federal law concept to decide the issue before us here.

8. 42 Pa.C.S. § 6605(a).

9. 42 Pa.C.S. §§ 6602(a)–(c).

240(f) states that a party proceeding in forma pauperis in such an action shall *not* be required to pay any fee imposed by law.[10] Pa. R.C.P. No. 240(f). Clearly, the statute and rule are inconsistent, and, as a result, the statute must be suspended. *See* Pa. Const., Art. V, § 10(c).

Nevertheless, Judge Pellegrini states that the legislature has authority, through its power over the budget, to require prisoners proceeding in forma pauperis to pay filing fees in prison conditions litigation. (C.O./D.O. at 4–5.) Thus, Judge Pellegrini concludes that the legislature's enactment of sections 6602(a) to (c) does not usurp the judicial function of prescribing rules of court and, therefore, the statute does not violate the separation of powers doctrine. However, if *requiring* the payment of filing fees by in forma pauperis litigants is a legislative function relating to the budget, then our supreme court has usurped that function by promulgating a rule *excusing* the payment of filing fees. In other words, it appears to me that Judge Pellegrini would hold that our supreme court, rather than the legislature, has violated the separation of powers doctrine. I could not agree with such a holding.

Finally, Judge Pellegrini notes that the federal Prisoner Litigation Reform Act of 1995 [11] and similar state laws have been upheld on numerous occasions. Judge Pellegrini cites federal cases from various circuit courts and state court cases from New York, Massachusetts, Alaska, Wisconsin and Missouri. (813 A.2d at 831 n. 2.) However, the case before us involves the application of Article V, section 10(c) of the Pennsylvania Constitution. The holdings of the federal courts or other state courts have no relevance.

Judge SMITH–RIBNER joins in this concurring/dissenting opinion.

---

10. It is firmly rooted in the common law that a plaintiff has the right to proceed in forma pauperis, free from filing fees, where the plaintiff is proved to be in poverty. *Selby v.*

*Brown,* 292 Pa.Super. 463, 437 A.2d 767, 768 (1981).

