458 A.2d 183

**Joseph F. BOYLE, Appellant,**

v.

**Helen B. O'BANNON, Secretary Department of Public Welfare Commonwealth of Pennsylvania, Appellee.**

Supreme Court of Pennsylvania.

Argued Jan. 25, 1983.

Decided March 31, 1983.

496

Joseph F. Boyle, I.P.P., Nanticoke, for appellant.

Walter F. Froh, Sp. Deputy Atty. Gen., Harrisburg, for appellee.

Before ROBERTS, C.J., and NIX, LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON and ZAPPALA, JJ.

## OPINION

LARSEN, Justice.

In this appeal we are confronted with the question of whether a court has the power and authority to dismiss a complaint, sua sponte, before the complaint is served on the named defendant and without affording the plaintiff an opportunity to be heard.

On June 24, 1981, the appellant, Joseph F. Boyle, filed, pro se, an action in equity against Helen B. O'Bannon, Secretary, Department of Public Welfare, Commonwealth of Pennsylvania. In his complaint appellant alleges that the defendant wilfully infringed upon his legally protected rights by malicious conduct which invades his privacy, subjects him to continual harrassment, physical molestation, and psychological abuse, and tends to heap public ridicule upon him.[1]

---

1. In his complaint, the appellant, inter alia, avers: that defendant and employees under her direction and control have subjected him to continuous visual and camera surveillance for a period in excess of 3½ years; that the defendant employs skilled lip-readers for the

On June 25, 1981, one day after the appellant filed his complaint, and before the complaint was served on the defendant, the Commonwealth court, without further comment, entered the following per curiam order: [2]

"Now, June 25, 1981, the above proceeding is hereby dismissed as frivolous. The chief clerk is directed to return to plaintiff the filing fee in this matter and the check tendered by plaintiff for service of the complaint."

We find it is highly irregular and improper for a court to intercept a lawsuit between the prothonotary's office and the sheriff's desk and summarily dismiss the action; that the Commonwealth court erred in dismissing appellant's complaint and denying him an opportunity to be heard; and therefore we reverse.

Article I, Sec. 11 of the Pennsylvania Constitution provides as follows:

"All courts shall be open; and every man for an injury done him in his lands, goods, person or reputation shall have remedy by one course of law, and right and justice administered without sale, denial or delay..."

When the appellant properly commenced his action and paid the required filing fee he activated the judicial machinery of the Commonwealth. The initiation of a lawsuit

special purpose of learning what he says in his private conversations; that the defendant engages in surreptitious interrogation of the appellant through friends, neighbors, business associates, etc.; that the defendant has employed and trained various persons to follow and spy upon appellant in his daily activities; that employees of defendant have informed friends, acquaintances and business associates of appellant that he is under official investigation and that he is mentally ill and in need of committment; that he is physically abused by the persons who are assigned to follow him; that the defendant administers mind-controlling and mind-altering narcotics to him without his consent; that defendant has coerced members of appellant's family to spike his food and beverages with narcotics; and generally that defendant's course of conduct is designed to appropriate appellant's thoughts and ideas, to invade his privacy, to control his actions and to make him the object of public contempt.

2. It is curious that a busy court with a substantial appellate caseload would immediately learn of a lawsuit filed in the prothonotary's office and then instantly act to dismiss the complaint before service of process and without hearing from the plaintiff.

contemplates an orderly process leading to a just consideration and ultimate resolution of a claim. To that end effacaious rules of procedure[3] govern the legal journey from filing to final order or judgment. There are no special rules that apply to lawsuits which, upon private examination, a judge or panel of judges may regard as frivolous. Our system of justice does not include a judicial minister of undesirable lawsuits whose function it is to review all suits as they are filed, and whose powers include arbitrary and summary dismissal of those filings deemed to be frivolous, or otherwise without merit.

Whether the appellant's averments are sufficient to allege a cause of action is not the question; and, if a cause of action is stated, the appellant's ability to prove his allegations by competent evidence likewise is not the point. The fundamental issue is the appellant's right to due process of law.[4] "For more than a century the central meaning of procedural due process has been clear: 'parties whose rights are to be affected are entitled to be heard . . . .' *Baldwin v. Hale,* 1 Wall 223, 233, 17 L.Ed. 531." *Fuentes v. Shevin,* 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972). The precipitate abortion of appellant's embryonic lawsuit before service of process, without appearance by the defendant, and without proper motion and hearing is repugnant to traditional notions of justice and fair play, and conflicts with the due process requirements of the United States Constitution and The Pennsylvania Constitution.[5]

There is no rule of civil procedure which authorizes a court to arbitrarily deny a litigant service of process of a complaint lawfully filed. If a court could decide summarily

3. Pennsylvania Rules of Civil Procedure, 42 Pa.C.S.A. Rule 1 et seq.

4. ". . . nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." 14th Amendment, United States Constitution. Article 1, Section 11, Pennsylvania Constitution, supra.

5. 14th Amendment, United States Constitution, supra. Article I, Section 11, Pennsylvania Constitution, supra.

which lawsuits are worthy of service and which are not, we would be on the threshold of judicial tyranny. The law cannot sanction a court ignoring procedural rules and arbitrarily dismissing a plaintiff's complaint absent service of process and an opportunity for the plaintiff to be heard. To do so is to take a step toward sanctioning the entry of judgment in favor of a plaintiff without giving the defendant an opportunity for hearing. Despotic governmental action of this sort cannot be countenanced in a democracy.

The appellant's lawsuit may be entirely frivolous and lacking in merit; and his complaint may fail dismally to aver a cause of action upon which relief can be granted. In addition, it may be that he cannot amend his complaint to state an actionable claim. These, however, are questions that must be decided *after* and *not before* the litigants have had an opportunity to be heard.

Essentially, the appellee's argument, distilled to its essence, is that any reasonable person can readily see that the plaintiff's complaint contains nothing but outrageous, fanciful averments, incapable of proof and beyond belief. Therefore, it is more convenient for the court to step in at the outset and do then what everyone knows it would do after service and after hearing from the parties. Further, appellee argues that the court is already overburdened with "legitimate" litigation and the summary action taken here serves both the interests of justice and judicial economy.

We are well aware of the busy caseloads faced by the courts and we can appreciate an interest in minimizing frivolous lawsuits. Nonetheless, we cannot allow any action which permits denial of access to the courts in the name of judicial economy. Due process cannot be abolished to achieve judicial efficiency and convenience. *See Davis v. Porch,* 268 Pa. 376, 112 A. 32 (1920); *Allegheny County v. Milk Control Board,* 417 Pa. 22, 207 A.2d 838 (1965). *Lyndall v. High School Committee,* 19 Pa.Super.Ct. 232; *Swainband v. Yoder,* 79 Pa.Super.Ct. 132.

Reversed and remanded to the Commonwealth Court for proceedings consistent with this Opinion.

ZAPPALA, J., filed a concurring opinion in which ROBERTS, C.J., joins.

NIX, J., filed a dissenting opinion in which McDERMOTT, J., joins.

McDERMOTT, J., filed a dissenting opinion.

HUTCHINSON, J., filed a dissenting opinion.

ZAPPALA, Justice, concurring.

Although I concur in the result reached by the majority today, I believe the basis for the result can be found in our Rules of Civil Procedure. Our Rules of Civil Procedure provide the mechanism for discouraging the filing of frivolous lawsuits. Rule 1017 b(4) permits the Court to dismiss a complaint for failure to plead a cause of action. If after viewing the facts in a light most favorable to the non-moving party, the court determines a cause of action does not exist upon which a claimant can recover, then at that time the court has the duty to dismiss the lawsuit.

Thus, the Commonwealth Court's action in *sua sponte* dismissing the appellant's complaint was unwarranted. In view of the rationale I advocate in determining this appeal, it is not necessary to reach the constitutional issues addressed by the majority. However, as the majority holds, judicial economy must give way to free access to our courts. Therefore, the proper procedure should have been to permit the Commonwealth to file preliminary objections in accordance with our Rules of Civil Procedure, thereby giving the appellant the opportunity to establish the basis for his lawsuit. Because the Commonwealth Court usurped the procedure provided for by our Rules, I must concur in the result reached by the majority and reverse the decision of the Commonwealth Court.

ROBERTS, C.J., joins in this concurring opinion.

NIX, Justice, dissenting.

I dissent from the majority's reversal of the Commonwealth Court's dismissal of a complaint that is delusional on its face. *See* Opinion of Mr. Justice Larsen, 500 Pa. at 496 n. 1, 458 A.2d at 183 n. 1 (filed this day). While Article 1, Section 11 of the Constitution of Pennsylvania guarantees the courts will be open to all citizens, it is manifest that the guarantee does not extend to the prosecution of patently frivolous and fantasized claims.

The history of this appellant's groundless litigation since 1979 in state and federal courts is as follows:

In *Boyle v. Osterhout Free Library,* No. 79–1166, U.S. Dist. Court, M.D.Pa. (October 26, 1979), an action seeking to enjoin the library from the dissemination of false information which caused claimant great mental distress and anxiety was dismissed for lack of jurisdiction.

In *Boyle v. Commonwealth,* No. 79–1200, U.S. Dist. Court, M.D.Pa. (October 29, 1979), an action alleging agents of the Department of Mental Health and Retardation violated his civil rights because several attorneys chose not to represent him against the major television networks which allegedly disseminated false information, causing him great anxiety and mental stress, was dismissed for failure to state a claim.

In *Boyle v. Commonwealth,* No. 79–1263, U.S. Dist. Court, M.D.Pa. (October 29, 1979), a civil rights actions charging "agents of the Commonwealth interfered with [Boyle's] exercises of his constitutional rights in various ways, ranging from intercepting his thoughts and broadcasting them publicly as a means of harassment, to rigging [his] automobile with devices which dispense narcotic gases and lock his transmission so he is unable to drive," was dismissed because the allegations were beyond belief.

In *Boyle v. Osterhout Free Library,* No. 282–C of 1980, Court of Common Pleas of Luzerne County (December 8, 1980), a trespass action claiming dissemination of false information regarding the terms of office of the successors to

Pope Paul VI which interfered with Boyle's liberty and disoriented his mind, was dismissed for failure to state a cause of action which failure could not be cured by amendment.

In *Boyle v. Osterhout Free Library,* No. 146–E of 1980, Court of Common Pleas of Luzerne County (April 14, 1981), an equity action seeking to require the library to make available its factual and true edition rather than its non-factual and false editions of information, alleged the library gave Boyle the false set of publications such as the issue of *Time* which said Ronald Reagan was elected. This action was dismissed as without merit, it being recognized and accepted that Ronald Reagan was elected and is now President.

In *Boyle v. Commonwealth, Department of Mental Health and Mental Retardation,* No. 81–3–441, Supreme Court of Pennsylvania (December 4, 1981) the appeal was discontinued with exhibit attached, *see* Appendix to this dissent, as appellant wished to institute an action for equitable relief in the federal district court.

In *Boyle v. Osterhout Free Library,* No. 559, E.D.Misc. Dkt., Supreme Court of Pennsylvania (January 18, 1982), a Petition to Assume Original Jurisdiction alleging (a) the suit in equity against the Osterhout Free Library (seeking to require the library to afford all factual publications showing Ronald Reagan was not the President of the United States previously denied) was improperly dismissed on April 14, 1981 as without merit, (b) the Department of Public Welfare interfered with Boyle's interstate telephone survey to determine who is the current President of the United States, (c) the library's October 19, 1981 edition of *Newsweek* reporting the assassination of President Anwar Sadat was a non-factual edition and (d) the library kept altered texts available for the purpose of denying factual information to Boyle. This action was denied per curiam.

In *Boyle v. Commonwealth of Pennsylvania, Department of Mental Health and Mental Retardation,* No. 611, E.D.

Misc.Dkt.1981, Supreme Court of Pennsylvania (January 18, 1982), a Petition to Assume Original Jurisdiction seeking to compel answers to interrogatories in *Boyle v. Commonwealth, Department of Mental Health and Mental Retardation,* No. 2766–C of 1980 and alleging the Luzerne County Court "consented to conduct a false court proceeding whereby the plaintiff-petitioner in a drugged state" (drugs allegedly given by employees of the Department of Public Welfare) testified against a Mrs. Joyce Rittenhouse and alleging a denial of rights secured by section 11 of the Pennsylvania Constitution, was dismissed per curiam.

In *Boyle v. Commonwealth, Department of Welfare,* No. 4144C of 1980, Court of Common Pleas of Luzerne County (February 18, 1982) a trespass action alleging the Department of Public Welfare through its agents intentionally and maliciously caused Boyle to suffer emotional distress in 1974 through acts of economic and psychological intimidation similar to those set forth in two federal actions and *Boyle v. Osterhout Free Library,* No. 2282–C of 1980, Court of Common Pleas of Luzerne County, was dismissed because the allegations were beyond belief and unsupported by facts capable of proof, and because of the bar of the statute of limitations.

Obviously, the issue in this appeal is not the denial of access to the court system. The question is whether or not a court will be required to compel a responsive pleading before disposing of a patently frivolous action. Such a rule would unfairly place an economic burden upon persons who become the objects of Mr. Boyle's litigious whims. It is apparent appellant has caused an inordinate consumption of the valuable time of an already overburdened judiciary, as well as the waste of precious tax dollars expended to provide a rational legal system. It should be unnecessary to state that due process does not require the courts to allow such nonsensical profligacy. The Commonwealth Court properly summarily dismissed the action and should be affirmed.

McDERMOTT, J., joins in this dissenting opinion.

504

| | | | |
|---|---|---|---|
| First Draft | October | 19, | 1981 |
| Second " | " | 20, | 1981 |
| Typed | " | 21, | 1981 |
| Mailed | " | 22, | 1981 |

Dear Frank, Ruby & Mom;

The contents of this memorandum pertains to the description of the control mechanisms and the functions they perform on and within my Fiat automobile, a Fiat model X 1/9. I have brought two suits against the Commonwealth of Pennsylvania for the removal of these control mechanisms. The first was dismissed in federal court and the second is now before the Supreme Court of Pennsylvania and it too may have a fatal defect as to the caption of the parties. I purchased this automobile from Cresko Motors, Market Street, Kingston, Pennsylvania on February 23, 1979. I will now set forth a description of those control mechanisms and their functions. The first control mechanism which I became aware of is the one that controls whether or not I am able to shift gears. I presume this mechanism is electronically controlled and when engaged it prohibits me from changing gears. This mechanism as well as the others that I will describe are used to annoy, harass and to intimidate and frighten me. At the discretion of the employees of the DPW they electronically regulate the amount of gas fed into the carburetor thereby directly controlling the speed of the automobile. There is also a mechanism that electronically shuts down the engine, stalls it out and I am unable to restart it until the employees of the DPW decide to allow me to do so.

When these control mechanisms are used it is very frustrating, embarrassing and when used on interstate highways or in moving traffic very frightening. One day while I was driving Mom downtown the auto was stalled out in the middle of the intersection of Market and Ridge Streets, I

was permitted to restart the auto but it was then stalled out again in front of Three Duces and I was not permitted to restart it, this made it necessary for me to push the auto to the side of the street. It was embarrassing for both Mom and I; I returned later and was permitted to restart the auto without any difficulty. The auto through the use of these control mechanisms has been stalled out on numerous occasions on interstate highways in particular routes 80 & 81. One day Mom and I were returning from the Allentown area via Route 81 when the mechanisms were used to stall out the auto in traffic and when restarted a mechanism was used to control the speed of the auto at speeds substantially below 40 MPH. The DPW then commenced a psychological harassment exercise. The auto was stalled out and had come to a complete stop; I was permitted to restart the engine but the auto accelerated slowly with sudden jerky movements, the car was then passed by other vehicles at a rapid speed that appeared to coincide with the jerky forward movements, and Mom was told, I believe, to lean forward in her seat. This exercise took place over a course of a mile or so of interstate highway. At the end of the exercise the auto was returned to my control and I was able to resume the journey without any further difficulty. This exercise and others like it occur at regular intervals and I believe they have sexual psychological significance. In another letter I will detail other and significant examples of the psychological manipulation of my mind. The most recent occasions when the above referred to control mechanisms have been used when Mom has been a passenger and witness to their use is as follows: On July 12, 1981 while Mom and I were on a Sunday drive on Route 94 in New Jersey and again on September 10, 1981 while returning from Woodrich via Route 239 and again on October 11, 1981 on Routes 239, 903 and 534.

Another mechanism on the auto controls the recessed head lights and the electrical current to the light bulbs, in other words I can't travel at night unless they put the lights on and on occasions they have refused me that right. Their is

also equipment within the auto that dispenses narcotic gases, the effects of these narcotics will be discussed in another letter (October 12, 1981 was the last date this month the DPW administered gases to me while in my auto). Their is also a mechanism on the speedometer that when activated makes the speed indicating needle pulsate and I don't know at what speed I am traveling. The gas gage also has a control so it also pulsates from empty to the full position when the control mechanism is activated. Recently I have detected another control mechanism that applies the brakes, it is currently being used to harass me. Another type of electronic mechanism installed in my auto pickups and transmits sound, its a ultra sensitive bugging device and I believe it is clearly illegal under Pennsylvania's Wiretapping and Electronic Surveillance Act 18 Pa.C.S.A. 5701 et seq. I believe while Mom has been in my auto she has received instructions from employees of the DPW, that these employees over hear the conversations that Mom and I engage in; that these conversations have been transmitted by this bugging equipment and not by any equipment that Mom has carried with her. I have been under electronic surveillance 24 hours a day, 365 days a year for in excess of four years; this topic will be discussed in a separate letter. Since the Commonwealth of Pennsylvania is on record as denying the existence of this electronic equipment, these control mechanisms and since these denials can be introduced into evidence in any future law suit that I may institute for the removal of this equipment, and in view of Mr. H.L. Olivieri's letter to Judge Brominski dated September 15, 1981 (regarding suit 2766C of 1980, denial of legal counsel), I believe that under the present circumstances Mom should set forth in an affidavit her knowledge, detailing her past experiences and observations of how these control mechanisms function and any conversations she has had with DPW employees relative to these mechanisms, or the advance knowledge with which she was supplied with prior to their having been used when she was a passenger in my auto. I am on record that these control mechanisms exist, the state is on record that they don't exist, again a close reading of the letter I received

from the Department of Transportation in July and Mr. Olivieri's letter of September 15, 1981 is necessary to recognize that the Commonwealth has embarked on an exercise to discredit me.

This ends the second of the series of letters to my family detailing acts of a governmental agency since the abolishment of my Constitutional Rights.

cc: Honorable H. H. Baker, Jr.
      "     R. C. Byrd
      "     S. I. Hayakawa
      "     W. G. Magnuson      /s/ Joseph F. Boyle
      "     G. McGovern          Joseph F. Boyle
      "     C. Pell
      "     W. Proxmire
      "     S. Chisholm
      "     D. J. Flood
      "     B. M. Goldwater, Jr.
      "     J. J. Rhodes
      "     P. W. Rodino, Jr.
      "     J. C. Wright

McDERMOTT, Justice, dissenting.

From time to time all courts have the melancholy task of hearing complaints, filed pro se, by persons seeking refuge from imagined enemies. The farther the enemy from reality, the more real to them. They are sad and tedious occasions. Patient as a court may be, there must come an end, not only for the convenience of the court, but more specifically, for those against whom the proceedings are leveled. Persons are put to expense and discomfiture to answer complaints that are manifestly irrational, and to deny allegations that are the stuff of fevered sleep.

An issue raised in this case is when such proceedings can be properly ended. Under the circumstances, I am almost reluctant to say, for it sounds a chord from Wonderland, that they can end only after they begin. That is, the Prothonotary cannot refuse to accept and file, nor the Sheriff refuse to serve a complaint, however absurd. Only a court can dismiss a complaint. A question raised here is whether a court may do so sua sponte.

508

The majority has adopted the view that a court cannot, of its own motion, before service upon an alleged defendant, dismiss a complaint. The instant case is a clear example of a complainant who has abused the process of the courts in a series of frivolous actions, to the inconvenience and expense of all concerned.[1] For a court not to dismiss such complaints, under such palpable abuse, is to do an injustice to the parties required to respond. It is part of the syndrome that precipitates such complaints to suspect everyone. We must believe in the mature, good faith of our judicial officers and believe that their experienced judgment can perceive the difference between genuine and surrealistic fears. I join with Mr. Justice NIX.

HUTCHINSON, Justice, dissenting.

A cursory perusal of this appellant's factual allegations reveals he has no rights which are affected in the real world. The facts he pleads are from a world of fantasy. Furthermore, plaintiff was not deprived of his right to file this action. The court received and examined it. However, it did not require the defendant to assert her right to be heard. On the facts of this case she should not be required to. Indeed, it would have been pointless to do so since she was wholly successful.

458 A.2d 533

**In re B.C.G.**

---

1. Mr. Justice Nix in his dissenting opinion, lists appellants' previous actions.