871 A.2d 795

**John M. PAYNE; Paul Nolder; Frank Grazulis; Charles Lee; Richard Guy; All Others Similarly Situated**

**v.**

**COMMONWEALTH DEPARTMENT OF CORRECTIONS; Martin F. Horn, Secretary; Honorable Edward G. Rendell, Governor; Robert Bitner, Chief Hearing Examiner**

**Appeal of John M. Payne, Paul Nolder, Charles Lee and Richard Guy.**

**John M. Payne; Paul Nolder; Frank Grazulis; Charles Lee; Richard Guy; All Others Similarly Situated, Appellees**

**v.**

**Commonwealth Department of Corrections; Martin F. Horn, Secretary; Honorable Edward G. Rendell, Governor; Robert Bitner, Chief Hearing Examiner, Appellant.**

Supreme Court of Pennsylvania.

Argued May 11, 2004.

Decided April 29, 2005.

Samuel C. Stretton, West Chester, for John M. Payne et al.

Victoria Sellitto Freimuth, Camp Hill, John G. Knorr, Harrisburg, D. Michael Fisher, Pittsburgh, for Dept. of Corrections, et al.

Before: CAPPY, C.J., CASTILLE, NIGRO, NEWMAN, SAYLOR, EAKIN and BAER, JJ.

## *OPINION*

Chief Justice CAPPY.

These cross-appeals raise issues regarding the constitutionality of various provisions of the Prison Litigation Reform Act ("PLRA"), 42 Pa.C.S. §§ 6601–6608, Pennsylvania's Obscenity Law, 18 Pa.C.S. § 5903(a)(7)–(9), and administrative directive DC–ADM 803, which was promulgated by the Commonwealth

of Pennsylvania, Department of Corrections ("Department") to govern inmate mail and incoming publications. The Commonwealth Court upheld the constitutionality of the challenged provisions, with the exception of those sections of the PLRA involving filing fees in connection with prison conditions litigation. For the reasons that follow, we affirm in part and reverse in part the order of the Commonwealth Court.

The record establishes that in May through August of 1998, the Department refused to deliver certain issues of the magazines *Penthouse, High Society,* and *Black Video* addressed to five prisoners housed in state correctional facilities ("Prisoners") on the ground that the magazines violated the obscenity provisions of DC–ADM 803. The Prisoners challenged the Department's disapproval of the publications through all levels of the administrative process, but did not prevail.

The Prisoners subsequently commenced this action by filing a five-count petition for review in the Commonwealth Court's original jurisdiction, requesting declaratory relief and a preliminary injunction. The Prisoners alleged, *inter alia,* that the statutory and administrative prohibitions on their access to the magazines violated their right to free speech guaranteed by the Pennsylvania Constitution. They further contended that the various provisions of the PLRA were unconstitutional on their face and as applied because they infringed on this Court's exclusive authority to prescribe rules of practice and procedure pursuant to Article V, Section 10(c) of the Pennsylvania Constitution. Finally, the Prisoners contended that the Department failed to lawfully promulgate DC–ADM 803 as a regulation.

In November of 1998, the Commonwealth Court denied the Prisoners' request for a preliminary injunction. By order dated August 28, 2000, the Commonwealth Court also denied the Prisoners' motion for certification as a class action, but directed that any relief obtained through the action shall be applied system-wide within the Department. The Prisoners subsequently filed a motion for partial summary judgment, and the Department filed a cross-motion for summary judgment on all counts.

On December 5, 2002, the Commonwealth Court granted each motion in part and denied each in part. *Payne v. Commonwealth of Pennsylvania, Department of Corrections,* 813 A.2d 918 (Pa.Cmwlth.Ct.2002). Specifically, the court ruled that Sections 6602(a) through (c) of the PLRA, which concern the filing fees to be paid in prison conditions litigation, conflict with Pa.R.C.P. 240(f) and infringe upon our Court's exclusive rulemaking authority. Accordingly, it granted summary judgment to the Prisoners on this claim, but provided that any relief shall be prospective in nature. The Commonwealth Court further dismissed as moot the count alleging that the Department failed to lawfully promulgate DC–ADM 803 as a regulation because the Department had since done so. As to the remaining counts of the petition for review, the Commonwealth Court granted the Department's cross-motion for summary judgment, finding no constitutional impediment in the challenged provisions.[1]

■ Both the Prisoners and the Department have filed cross-appeals in this Court.[2] On appeal, we must determine

---

**1.** Judge Pellegrini filed a concurring and dissenting opinion. He agreed with the majority's analysis with the exception of its finding of unconstitutionality of 42 Pa.C.S. 6602(a) through (c). Judge Pellegrini opined that such provisions did not violate our Court's exclusive rulemaking authority because filing fees are not generally considered to encompass the practice and procedure of the courts. Rather, he asserted that filing fees were statutorily a consideration of the General Assembly.

Judge Friedman also filed a concurring and dissenting opinion, which was joined by Judge Smith–Ribner. Therein, Judge Friedman asserted that she would have held that three of the challenged provisions of the PLRA were unconstitutional. She stated that 42 Pa.C.S. § 6602(e) conflicted with Pa.R.C.P. 1028 and Pa.R.C.P. 1030, and that no rule of our Court permitted a court to dismiss *sua sponte* a complaint as frivolous or malicious where the litigant has paid the appropriate filing fee. She further would have held that Section 6602(f) was unconstitutional because our rules do not permit a court to dismiss a case based on a party's prior litigation. Finally, Judge Friedman asserted that Section 6605(a) was unconstitutional because it is inconsistent with Pa.R.C.P. 1531.

**2.** Pursuant to 42 Pa.C.S. § 723(a), our Court has exclusive jurisdiction of appeals from final orders of the Commonwealth Court entered in any matter which was originally commenced in that court.

whether the Commonwealth Court properly granted summary judgment to the respective parties. We keep in mind that an appellate court may reverse the entry of a summary judgment only where it finds that the lower court erred in concluding that the matter presented no genuine issue as to any material fact and that it is clear that the moving party was entitled to a judgment as a matter of law. *Phillips v. Cricket Lighters*, 576 Pa. 644, 841 A.2d 1000, 1004 (2003). In making this assessment, we view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. *Id.* As our inquiry involves solely questions of law, our review is *de novo. Id.* at 1005.

This Court recognizes that a legislative enactment enjoys the presumption of constitutionality under both the rules of statutory construction and the decisions of our Court. See 1 Pa.C.S. § 1922(3); *Ieropoli v. AC&S Corp.*, 577 Pa. 138, 842 A.2d 919 (2004). The party challenging a legislative enactment bears a heavy burden to prove that it is unconstitutional. *Id.* at 928. A statute will only be declared unconstitutional if it clearly, palpably and plainly violates the constitution. *Id.* Any doubts are to be resolved in favor of a finding of constitutionality. 1 Pa.C.S. § 1922(3).

## I.

We first address the Prisoners' challenges to the PLRA. We note that our General Assembly enacted the statute in 1998, modeling it after the federal Prison Litigation Reform Act enacted in 1995, P.L. 104–134, tit. Vii Stat. 1321 (1996). The federal statute is intended to promote administrative redress, to filter out groundless claims, and to foster better prepared litigation of prisoner claims. *Booth v. Churner*, 532 U.S. 731, 737, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001). To achieve such purpose, both the federal and Pennsylvania PLRA set forth guidelines to be followed in prison conditions litigation.[3]

3. "Prison conditions litigation" is defined as:

Although we shall address the challenges to each subsection of the PLRA separately, we note that the Prisoners' primary argument is that the provisions violate our Court's rulemaking authority pursuant to Article V, Section 10(c) of the Pennsylvania Constitution. In 1968, the Commonwealth of Pennsylvania adopted Article V of the Pennsylvania Constitution (the "Judiciary Article"), which provides for a unified judicial system. The Judiciary Article vests in the Supreme Court "general supervisory and administrative authority over all the courts," PA. CONST. art. V, § 10(a), and provides that

> [t]he Supreme Court shall have the power to prescribe general rules governing practice, procedure and the conduct of all courts ... if such rules are consistent with this Constitution and neither abridge, enlarge nor modify the substantive rights of any litigant, nor affect the right of the General Assembly to determine the jurisdiction of any court or justice of the peace, nor suspend nor alter any statute of limitation or repose. All laws shall be suspended to the extent that they are inconsistent with rules prescribed under these provisions.

PA. CONST. art. V, § 10(c).[4]

■ This Court's power to establish rules of procedure for state courts is exclusive. *Commonwealth v. Morris*, 565 Pa. 1, 771 A.2d 721, 736 (2001). In the case of *In re 42 Pa.C.S. § 1703*, 482 Pa. 522, 394 A.2d 444 (1978), we expressly rejected the notion that the General Assembly exercises concurrent power in this regard. We explained that

> A civil proceeding arising in whole or in part under Federal or State law with respect to the conditions of confinement or the effects of actions by a government party on the life of an individual confined in prison. The term includes an appeal. The term does not include criminal proceedings or habeas corpus proceedings challenging the fact or duration of confinement in prison.
> 42 Pa.C.S. § 6601.

**4.** Prior to the 1968 Constitution, the explicit grant of rulemaking authority to the judiciary came from the General Assembly. Act of June 21, 1937, P.L. 1982, No. 392, amended by the Act of March 30, 1939, P.L. 14, and the Act of August 25, 1959, P.L. 751. The grant of exclusive rulemaking power, codified as 17 P.S. § 61, was repealed by Section 2 of the Judiciary Act Repealer Act, No. 1978–53.

[w]hile the separation of powers doctrine does not "contemplate total separation of [the] three ... branches of Government," *Buckley v. Valeo,* 424 U.S. 1, 104, 96 S.Ct. 612, 675, 46 L.Ed.2d 659 (1976), the existence of appropriate overlap between branches with respect to some functions of government does not mean that such overlap is appropriate with respect to all functions. The Pennsylvania Constitution grants the judiciary—and the judiciary alone—power over rule making.

*Id.* at 451. Although our power in this regard is exclusive, we do not trifle lightly with the means chosen by the Legislature to effectuate its desired end and suspend statutes only with great reluctance. *In re Suspension of the Capital Unitary Review Act,* 554 Pa. 625, 722 A.2d 676, 680 (1999). As a general proposition, we have struck statutes where they have been inconsistent with our procedural rules. *Id.*

■ Because this Court's rulemaking authority extends only to procedural law, the threshold inquiry in determining whether a particular statute violates Article V, Section 10(c) is whether the statute is procedural or substantive in nature. *Commonwealth v. Morris,* 771 A.2d at 737. The limitation placed on the legislature's power by Article V, Section 10(c) does not affect its ability to address the substantive law in a particular area. *Id.* The attempt to devise a universal principle for determining whether a provision is inherently procedural or substantive in nature, however, has met with little success in the history of our jurisprudence. *Laudenberger v. Port Authority of Allegheny County,* 496 Pa. 52, 436 A.2d 147, 150 (1981). As a general rule, substantive law is that part of the law which creates, defines and regulates rights, while procedural laws are those that address methods by which rights are enforced. *Morris,* 771 A.2d at 738 (citing *Morabito's Auto Sales v. Commonwealth, Department of Transportation,* 552 Pa. 291, 715 A.2d 384, 386 (1998)).

■ Keeping these principles in mind, we address the Prisoners' first argument that 42 Pa.C.S. § 6602(e) unconstitu-

tionally interferes with this Court's exclusive rulemaking authority.[5] Section 6602(e) provides as follows:

(e) Dismissal of litigation.—Notwithstanding any filing fee which has been paid, the court shall dismiss prison conditions litigation at any time, including prior to service on the defendant, if the court determines any of the following:

(1) The allegation of indigency is untrue.

(2) The prison conditions litigation is frivolous or malicious or fails to state a claim upon which relief may be granted or the defendant is entitled to assert a valid affirmative defense, including immunity, which, if asserted, would preclude the relief.

The court may reinstate the prison conditions litigation where the dismissal is based upon an untrue allegation of indigency and the prisoner establishes to the satisfaction of the court that the untrue information was not known to the prisoner.

42 Pa.C.S. § 6602(e).

Section 6602(e) therefore directs the court to dismiss a prisoner's action before service on the defendants where the court concludes that the allegation of indigency is untrue, the action is frivolous or fails to state a claim upon which relief

5. In their complaint, the Prisoners alleged that such provision was unconstitutional on its face and as applied. In their brief to our Court, however, the Prisoners make no such distinction between constitutional arguments. We treat the Prisoners' challenge to Section 6602(e) as a facial one because the Commonwealth Court did not *sua sponte* dismiss their complaint on the grounds that it was frivolous or that it failed to state a claim upon which relief could be granted. Rather, as noted, the Commonwealth Court adjudicated the claim on cross-motions for summary judgment and addressed the merits of each constitutional challenge. We further note that the Department makes no argument that the Prisoners lack standing to bring a facial challenge to a provision of the PLRA that was not applied to them. Because the question of standing is not an issue of subject matter jurisdiction, we cannot raise it *sua sponte. Hertzberg v. Zoning Board of Adjustment of the City of Pittsburgh*, 554 Pa. 249, 721 A.2d 43, 46 n. 6 (1998); *see also Commonwealth v. Labron*, 543 Pa. 86, 669 A.2d 917, 919 (1995), *rev'd* 518 U.S. 938, 116 S.Ct. 2485, 135 L.Ed.2d 1031 (1996), *reaffirmed by* 547 Pa. 344, 690 A.2d 228 (1997) (holding that our Court will not consider an issue of whether a defendant has standing to seek suppression of evidence if the issue was not raised in the lower court). We, therefore, proceed to address the merits of the Prisoners' claim.

may be granted, or when the defendant is entitled to assert a valid affirmative defense that would preclude relief. A cursory review of this section may lead one to believe that the Legislature is creating a *procedure* by which the court shall dismiss prison conditions litigation. Upon closer scrutiny, however, we conclude that Section 6602(e) defines the rights of prisoners by setting forth the circumstances under which the right to file prison condition litigation shall be summarily denied. Rather than establishing a method or procedure to enforce a substantive right, Section 6602(e) regulates the substantive right to file prison conditions litigation due to the Legislature's belief that such claims are particularly prone to being frivolous and therefore subject to summary dismissal. As we conclude that Section 6602(e) defines the parameters for the entitlement to a right, we hold that such provision is substantive in nature and within the realm of the General Assembly's constitutional authority. Article V, Section 10(c) is therefore not implicated.

We find support for this conclusion in *Commonwealth v. Morris, supra,* where 42 Pa.C.S. § 9545 was challenged as violative of Article V, Section 10(c). Subsection (c) of that statute provided as follows:

(c) Stay of Execution.—

(1) No court shall have the authority to issue a stay of execution in any case except as allowed under this subchapter.

(2) Except for first petitions filed under this subchapter by defendants whose sentences have been affirmed on direct appeal by the Supreme Court of Pennsylvania between January 1, 1994, and January 1, 1996, no stay may be issued unless a petition for postconviction relief which meets all the requirements of this subchapter has been filed and is pending and the petitioner makes a strong likelihood of success on the merits.

42 Pa.C.S. § 9545(c).

In *Morris,* we acknowledged that the Legislature appeared to be setting forth the process for enforcing the right to a stay

of execution. *Morris,* 771 A.2d at 738. We held, however, that a closer inspection of the provision revealed that Section 9545 was merely defining the appropriate circumstances for securing a substantive right, *i.e.,* the entry of the stay of execution. *Id.* We emphasized that although the Legislature was not "creating" the right to stay, it was clearly defining the parameters for the grant of a stay of execution and therefore Section 9545 was substantive in nature. Thus, we concluded that Section 9545 did not violate Article V, Section 10. *Id.* Similar to Section 9545, Section 6602(e) of the PLRA defines the parameters for relief.

Rather than examining whether Section 6602(e) is a substantive or procedural provision, the Prisoners dedicate a significant portion of their brief to the argument that Section 6602(e) violates Article V, Section 10(c) because it is inconsistent with Pa.R.C.P. 240(j), Pa.R.C.P. 1028, and Pa.R.C.P. 1030. We need not address whether or not there is a conflict between the statute and our procedural rules as we have concluded that Section 6602(e) is substantive in nature and Article V, Section 10(c) grants this Court exclusive rulemaking authority only over *procedural* law. *Morris,* 771 A.2d at 737. As noted, the limitation placed on the legislature's power by Article V, Section 10(c) does not affect its ability to address the substantive law in a particular area. *Id.* As we have concluded that Section 6602(e) is substantive, all challenges based on Article V, Section 10(c) fail.[6]

6. The Prisoners also challenge Section 6602(e) based upon our decision in *Boyle v. O'Bannon,* 500 Pa. 495, 458 A.2d 183 (1983) (plurality). There, the Commonwealth Court *sua sponte* dismissed a *pro se* civil complaint filed against the Commonwealth of Pennsylvania, Department of Welfare, before the complaint was served on the defendant and without affording the plaintiff an opportunity to be heard. In a plurality decision, our Court reversed the Commonwealth Court's order on the ground that there is no rule which authorized such summary dismissal. *Id.* at 185. The plurality cited due process concerns and Article I, Section 11 of the Pennsylvania Constitution, which declares that the courts shall be open to all citizens. We do not find the *Boyle* decision to be controlling here. The Prisoners here have not preserved any challenge to Section 6602(e) on due process grounds, but only contend that it offends Article V, Section 10(c). *Boyle* did not speak to the issue presented here as to whether the General Assembly can enact legislation granting the court authority to dismiss prisoner conditions litiga-

## II.

The Prisoners next challenge the constitutionality of Section 6602(f) of the PLRA. This section provides as follows:

(f) Abusive litigation.—If the prisoner has previously filed prison conditions litigation and:

(1) three or more of these prior civil actions have been dismissed pursuant to subsection(e)(2) (relating to claims that are frivolous or fail to state a claim upon which relief may be granted); or

(2) the prisoner has previously filed prison conditions litigation against a person named as a defendant in the instant action or a person serving in the same official capacity as a named defendant and a court made a finding that the prior action was filed in bad faith or that the prisoner knowingly presented false evidence or testimony at a hearing or trial; the court may dismiss the action. The court shall not, however, dismiss a request for preliminary injunctive relief or a temporary restraining order which makes a credible allegation that the prisoner is in imminent danger of serious bodily injury.

42 Pa.C.S. § 6602(f).

The Prisoners challenge this "three strikes" provision on the basis that it violates Article V, Section 10(c). They contend that Section 6602(f) is unconstitutional because it provides for the dismissal of an action based on that party's previous litigation history, in contravention of our rules of civil procedure. Before we examine whether there is a conflict between the statute and our rules, we must first determine whether the provision is procedural or substantive in nature. Similar to Section 6602(e), Section 6602(f) initially appears to be setting forth a *procedure* for dismissal of prison conditions litigation. The section permits the court to dismiss the actions of abusive litigants, defined as those who have had three earlier actions dismissed under subsection (e)(2), or who have previously been found to have filed actions in bad faith, or who have knowingly

tion under enumerated circumstances without offending Article V, Section 10(c). It is therefore of little import to the Prisoners' claim.

presented false testimony. The section exempts requests, however, for temporary or preliminary relief which make a credible allegation of an imminent danger of serious bodily injury.

Consistent with our rationale underlying our discussion of Section 6602(e), we hold that Section 6602(f) is likewise a substantive provision because it defines the parameters under which the right to relief will be denied in a prison conditions action. By establishing standards for the dismissal of prison conditions litigation under the enumerated circumstances where the inmate has a history of filing frivolous lawsuits, the Legislature has restricted the relief that prisoners may obtain from the court. As we find that Section 6602(f) is substantive in nature, Article V, Section 10(c) is not implicated.

## III.

The next provision of the PLRA that the Prisoners challenge as violative of Article V, Section 10(c) is Section 6605(a), which provides as follows:

(a) Preliminary injunctive relief.—In prison conditions litigation, the court may, to the extent authorized by law, enter a temporary restraining order or preliminary injunction. A preliminary injunction shall automatically expire 90 days after its entry unless the court makes the findings required under section 6604 (relating to prospective relief) for the entry of prospective relief and makes the order final before the expiration of the 90–day period.

42 Pa.C.S. § 6605(a).

We must first determine whether this section, which allows for automatic dissolution of an injunction after ninety days, is procedural in nature. We conclude that it is. Unlike Sections 6602(e) and (f) discussed *supra*, Section 6605(a) does not create, define or regulate prisoner's rights. It does not set forth parameters defining when a litigant is entitled to relief or when such relief will be denied. Instead, Section 6605(a) sets forth a procedure which the court must follow when preliminary injunctions are entered in a prison conditions

case. The Commonwealth Court appeared to recognize this when it held that "[Section 6605(a) of the] PLRA merely mandates that findings be made in order to support what is essentially a cause of action for injunctive relief in excess of ninety days. This provision in no way precludes or restrains the court in its fact-finding power or in imposing a remedy supported by the facts." *Payne*, 813 A.2d at 928. What the Commonwealth Court overlooked was the fact that Section 6605(a) speaks only to procedure, a matter constitutionally designated exclusively to our Court.

The Prisoners argue that the procedure set forth in Section 6605(a) is inconsistent with Pa.R.C.P. 1531 because the former allows for automatic dissolution of an injunction after ninety days and the latter does not. We agree. Rule 1531(c) provides that "any party may move at any time to dissolve an injunction." Further, subsection (d) of the Rule provides that an injunction that is granted without notice to a party will be dissolved unless there is a hearing within five days. There is no rule of civil procedure providing for the automatic dissolution of a preliminary injunction. Our Court's silence on this sunset procedure of automatic dissolution is significant. Because we have spoken generally to the subject of preliminary injunctions and did not create a procedure allowing for their automatic dissolution, the General Assembly may not do so by statute.

We emphasize that it is not the significance of the procedure contained in the statutory provision that is constitutionally problematic, but rather the fact the statute contains a court procedure. This Court recognizes that the General Assembly may see the need to draft a statute that speaks to a court procedure. We caution, however, that such procedures may be subject to challenge and, ultimately, suspension. Our Court has held that we must "resist, temperately, though firmly, any invasion of this Court's province, whether great or small." *Commonwealth v. Sutley*, 474 Pa. 256, 378 A.2d 780, 783 n. 5 (1977) (quoting *DeChastellux v. Fairchild*, 15 Pa. 18, 21 (Pa.1850)). It is with great consideration and reluctance that we resist such intrusion here. Accordingly, we hold that

Section 6605(a) is unconstitutional because it intrudes upon this Court's exclusive rulemaking authority granted under Article V, Section 10(c). The Commonwealth Court therefore erred in granting summary judgment in favor of the Department on this issue.[7]

## IV.

To conclude our analysis of the challenged provisions of the PLRA, we next examine Sections 6602(a) through (c), which address the payment of filing fees by prisoners commencing prison conditions litigation, and who seek *in forma pauperis* status. Subsection (a) of Section 6602 provides that the court shall deny *in forma pauperis* status where the request is not accompanied by a copy of the prisoner's account statement covering the preceding six months, where that statement reveals that the prisoner's average monthly deposit or average monthly balance exceeds the amount of the filing fee, or for any grounds that exist under the Pennsylvania Rules of Civil Procedure. 42 Pa.C.S. § 6602(a).

Subsection (b) provides that, when *in forma pauperis status* is granted, the prisoner must nevertheless pay a full or partial filing fee, calculated on the basis of average monthly deposits or average monthly balance, when such funds exist. Subsection (c) provides that, when a partial payment is made, further monthly payments—20% of the preceding month's income—are to be made whenever the prisoner's account balance exceeds $10.00. Subsection (d) provides, however, that "a prisoner shall not be prohibited from filing prison conditions litigation because the prisoner has no ... means to pay the filing fee."

As with the previous challenges based on Article V, Section 10(c), we first determine whether Section 6602 involves procedural or substantive matters. We conclude that Section 6602 is procedural in nature because it sets forth the method by which inmates enforce their rights to file prison conditions

---

7. We shall refer this matter to our Civil Procedural Rules Committee to determine whether this Court should adopt a rule consistent with Section 6605(a).

litigation, *i.e.*, by the payment of a filing fee. Substantive rights of the litigant are not affected by Section 6602 as the statute expressly recognizes that a prisoner will not be denied his right to file an action based upon his inability to pay the filing fee. Moreover, the Department does not appear to dispute that Section 6602 is procedural. Similar to the position taken in the dissenting opinion below, the Department contends that Section 6602 does not involve a *court* procedure, but rather a matter statutorily delegated to the Legislature.

Having concluded that Section 6602 is procedural, we proceed to examine the Prisoners contention that it is unconstitutional because it conflicts with Pa.R.C.P. 240(f). The Commonwealth Court agreed with the Prisoners argument and held that Section 6602(a)–(c) violates Article V, Section 10(c) because the "absolute prohibition, in prison conditions litigation matters, against allowing an inmate to litigate without paying a filing fee directly contradicts Rule 240(f) and the Supreme Court's rulemaking authority." *Payne*, 813 A.2d at 926. On this basis, the Commonwealth Court granted summary judgment in favor of the Prisoners.

Pennsylvania Rule of Civil Procedure 240(f) provides as follows:

A party permitted to proceed *in forma pauperis* shall not be required to

(1) pay any cost or fee imposed or authorized by Act of Assembly or general rule which is payable to any court or prothonotary or any public officer or employee, or

(2) post bond or other security for costs as a condition for commencing an action or taking an appeal.

Pa.R.C.P. 240(f).

As noted, the Department's argument in favor of sustaining Section 6602 mirrors that set forth in Judge Pellegrini's dissent below. It contends that the Commonwealth Court erred in striking the PLRA provisions regarding filing fees because they are not encompassed within the practice and procedure of the courts. To the contrary, the Department maintains that filing fees are established, and their level set,

either directly by statute, *see, e.g.,* 42 Pa.C.S. § 1725 (establishment of fees and charges), 42 P.S. §§ 21010 (civil action fees), 21042 (fee schedule), 21071 (fees); or by court officials acting pursuant to authority conferred by statute. *See e.g.,* 42 P.S. §§ 21032.1 (fees by clerks of orphans' courts in second through eighth class counties), 21032.2 (additional fee authorized in second class counties), 21042.1 (establishment and modification of fees), 21071.1 (increasing existing fees) (Purdon 2003 Supp.). The Department further contends that the General Assembly likewise retains control over the disposition of the money collected in filing fees. *See e.g.,* 42 Pa.C.S. § 1725(c)(2)(iv) (specified funds to be used for computerization), (x) (judicial education and training), (d) (county law library); 42 P.S. §§ 21032.2 (Additional fee authorized in second class counties), 21042.2 (additional fee for computerizing prothonotary's office), 21071.2 (Automation fee for prothonotary's office) (Purdon 2003 Supp.). Thus, the Department argues that Judge Pellegrini correctly opined that "[f]iling fees are considered a part of the budgetary process funding the operation of the Commonwealth and funding of the courts," *Payne,* 813 A.2d. at 931 (Pellegrini, J., Concurring and Dissenting), which is a legislative concern and not one that could be described as the practice or procedure of the court. It concludes that if the General Assembly may legislate on who must pay fees, how much they must pay, and for what services, then it is clear that the General Assembly may legislate on who need *not* pay.

The Department's analysis goes one step too far. The difference between the establishment and the appropriation of filing fees and the directive that a litigant is not required to pay the same lies in the fact that our Court has enacted a procedure specifically governing the latter. Stated differently, we agree that the General Assembly has statutory authority to set filing fees and direct where such funds are to be appropriated. We further agree that such matters do not necessarily fall under the category of a "court" procedure. Section 6602, however, does not address the establishment of a filing fee or its appropriation. Rather, Section 6602 creates a

procedure whereby an inmate is required to pay costs when the court has granted him *in forma pauperis* status. Such edict directly conflicts with Rule 240(j), which provides that a party who has been granted *in forma pauperis* status **shall not** be required to pay **any costs** imposed by statute or local rule. Pa.R.C.P. 240(j) (emphasis added). The practical effect of Section 6602 is to invalidate a judicial determination that an individual may proceed with the litigation without paying the costs incident thereto. The conflict between procedural pronouncements of this Court and the Legislature in this regard is unmistakable.

> Judge Pellegrini, in the dissent below, opined that
>
> the provision at issue merely recognizes that a prisoner seeking to proceed *in forma pauperis* is not necessarily on even ground with other private individuals seeking to file a civil claim, because prisoners do not face the same financial burden that other individuals may face; prisoners, unlike others, are provided with room, board and medical expenses as well as other basic needs by the Commonwealth.

*Payne*, 813 A.2d at 932, (Pellegrini, J., dissenting). While we do not question the policy underpinning Section 6602 or the laudable motives of the Legislature, this Court cannot ignore our constitutional obligation to suspend laws which conflict with our own procedural rules. Because Sections 6602(a) through (c) of the PLRA contravene the mandate in Rule 240(j), we hold that such provisions violate our exclusive rulemaking authority under Article V, Section 10(c). Accordingly, we affirm the Commonwealth Court's entry of summary judgment in favor of the Prisoners on this issue and direct that any relief granted shall be prospective only.

## V.

Having resolved the issues involving the PLRA, we proceed to examine the constitutionality of the Obscenity Law and the Department's DC–ADM 803. A review of the evolution of the statute and the regulation is helpful to our analysis. In August of 1998, Section 5903 of the Crimes Code was amended to provide that it was a criminal offense for an inmate to

possess obscene material, or for any person to deliver or permit the entry of obscene material into a correctional facility. 18 Pa.C.S. § 5903(a)(7)–(9), added by Act 1998–76 (eff. Aug. 17, 1998).[8]

In light of this statutory amendment, the Department redrafted its administrative directive that governed prisoners' access to sexually oriented material. Effective on February 2, 1998, DC–ADM 803 prohibited inmates from "sending or receiving correspondence containing . . . obscene materials." DC–ADM 803. The directive provides that publications raising questionable content were to be reviewed by the Incoming Publication Review Committee ("IPRC"), *id.* at VI(F)(1)(f), and that a prisoner could appeal from the IPRC's decision in accordance with the "Consolidated Inmate Grievance Review System" set forth at DC–ADM 804. *Id.* at VI(F)(3)(a). The directive defines "obscene" by referring to the statutory definition in 18 Pa.C.S. § 5903.[9] *Id.* at IV(K). The policies set

8. The text of these provisions state:

§ 5903. Obscene and other sexual materials and performances

(a) Offenses defined.—No person, knowing the obscene character of the materials or performances involved, shall:

* * *

(7) knowingly take or deliver in any manner any obscene material into a State correctional institution, county prison, regional prison facility or any other type of correctional facility;

(8) possess any obscene material while such person is an inmate of any State correctional institution, county prison, regional prison facility or any other type of correctional facility; or

(9) knowingly permit any obscene material to enter any State correctional institution, county prison, regional prison facility or any other type of correctional facility if such person is a prison guard or other employee of any correctional facility described in this paragraph.

18 Pa.C.S. § 5903(a)(7)–(9).

9. Section 5903 defines "obscene" as:

Any material or performance, if:

(1) the average person applying contemporary community standards would find that the subject matter taken as a whole appeals to the prurient interest;

(2) the subject matter depicts or describes in a patently offensive way, sexual conduct of a type described in this section; and

(3) the subject matter, taken as a whole, lacks serous literary, artistic, political, educational or scientific value.

18 Pa.C.S. § 5903(b).

forth at DC–ADM 803 have since been promulgated as a regulation, codified at 37 Pa.Code § 93.2.

Before we address the Prisoners' allegations, we first make clear what they are *not* arguing. The Prisoners are not arguing that Section 5903 of the Crimes Code is unconstitutional as applied to them, presumably because they were never charged with violating the statute.[10] Further, the Prisoners do not allege a violation of their constitutional right to free speech under the First Amendment to the United States Constitution. Rather, in a summary fashion, the Prisoners allege that the amendments to Section 5903 and DC–ADM 803 violate Article I, Section 7 of the Pennsylvania Constitution, which provides, in relevant part, as follows:

> The free communication of thoughts and opinions is one of the invaluable rights of man, and every citizen may speak, write and print on any subject, being responsible for the abuse of that liberty.

PA. CONST. art. I, § 7. The Prisoners' sole argument is that the Obscenity Law improperly constitutes "censorship and restraint of publication" as described in *William Goldman Theatres, Inc. v. Dana*, 405 Pa. 83, 173 A.2d 59 (1961), and effectively denies them access to their subscriptions of *Penthouse* and *High Society* magazines. They argue that because the publications at issue are available to adults in the general public, they should not be prohibited from viewing them in prison.

The Prisoners' contentions are not persuasive. In *William Goldman Theatres, Inc.*, this Court examined the provisions of the Motion Picture Control Act of September 17, 1959, P.L. 902, 4 P.S. § 70.1 *et seq.* ("Act"), which required any person intending to sell, lease, lend, exhibit, or use any motion picture film to register with the Pennsylvania State Board of Motion Picture Control and to notify the Board within 48 hours before the first showing of the film. A registrant also was required to pay an annual registration fee. The Board, which consisted

---

**10.** The Commonwealth Court opinion, however, indicates that the Prisoners argued in that court that Section 5903 was unconstitutional "as applied" to them. *Payne*, 813 A.2d at 924.

of appointees of the Governor, was empowered to examine any film exhibited at least once in the Commonwealth. If a majority of the Board concluded that the film was "obscene," the statute required that the film be disapproved. Most significantly, the statute made the exhibition of a disapproved film a criminal offense subject to a fine not exceeding $1,000.00, or a prison sentence not exceeding 6 months, or both.

Our Court ruled that the Act clearly was invalid on its face, as it violated Article I, Section 7 by engaging in a "pre-censorship of the exercise of the individual's right to freely communicate thoughts and opinions." 173 A.2d at 64. The Court emphasized that the Act placed in the hands of three persons, selected by the Governor, the power to judge and condemn motion picture films and allow for the criminal prosecution of those who exhibit such films. *Id.* We went on to find that the statute violated Article I, Sections 6 and 9 of the Pennsylvania Constitution, which preserve the right to a jury trial and guarantee a speedy public trial by an impartial jury of the vicinage. *Id.*

The Obscenity Law does not share the constitutional infirmities present in the Motion Picture Control Act. Rather than reserving the determination of obscenity to a panel of gubernatorial appointees, Section 5903(i) expressly provides that "[t]he right to trial by jury shall be preserved in all proceedings under this section." 18 Pa.C.S. § 5903(i) This being the case, there is no "pre-censorship" of thoughts and opinions. A defendant charged under Section 5903 possesses the right to have *a jury* determine whether certain material falls within the statutory definition of "obscene."

■ *William Goldman Theatres, Inc.* is further distinguishable on the basis that Section 5903 prohibits obscene material from entering a correctional facility, as opposed to restricting the ability of the general public to view such material. The Prisoners fail to recognize such distinction and baldly assert that because the publications are readily available to adults outside the prison environment, their constitu-

tional rights are violated if they are not permitted to view the magazines within the confines of the prison. Such allegation is untenable. This Court has acknowledged that prison inmates do not enjoy the same level of constitutional protections afforded to non-incarcerated citizens. *Bronson v. Central Office Review Committee*, 554 Pa. 317, 721 A.2d 357, 359 (1998). Although prison walls do not separate inmates from their constitutional rights, because of the unique nature and requirements of the prison setting, imprisonment "carries with it the circumscription or loss of many significant rights ... to accommodate a myriad of institutional needs ... chief among which is internal security." *Small v. Horn*, 554 Pa. 600, 722 A.2d 664, 669–70 (1998) (quoting *Hudson v. Palmer*, 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984)). We therefore conclude that Section 5903 does not violate Article I, Section 7.

## VI.

As to the constitutional challenge to DC–ADM 803, we note that when a claim is raised that a prison regulation impinges on an inmate's constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests. *Turner v. Safley*, 482 U.S. 78, 84, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987); *Hackett v. Horn*, 751 A.2d 272 (Pa.Cmwlth. 2000).[11]

11. We recognize that the Prisoners' claim is not raised under the United States Constitution. Nevertheless, we agree with the Department that the standard set forth in *Turner v. Safley* is equally applicable to the instant claim under the Pennsylvania Constitution. We find compelling the following rationale relied upon by the *Turner* Court in adopting the deferential standard of review:

In our view, such a standard is necessary if "prison administrators ... and not the courts, [are] to make the difficult judgments concerning institutional operations." *Jones v. North Carolina Prisoners' [Labor] Union*, 433 U.S. [119], at 128[, 97 S.Ct. 2532, 53 L.Ed.2d 629]. Subjecting the day-to-day judgments of prison officials to an inflexible strict scrutiny analysis would seriously hamper their ability to anticipate security problems and to adopt innovative solutions to the intractable problems of prison administration. The rule would also distort the decision making process, for every administrative judgment would be subject to the possibility that some court somewhere would conclude that it had a less restrictive way of solving the problem at hand. Courts inevitably would become the primary

█ The four factors relevant in determining the reasonableness of a regulation have been summarized as follows: whether the regulation has a "valid, rational connection" to a legitimate governmental interest; whether alternative means are open to inmates to exercise the asserted right; what impact an accommodation of the right would have on guards and inmates and prison resources; and whether there are ready alternatives to the regulation.

*Overton v. Bazzetta,* 539 U.S. 126, 132, 123 S.Ct. 2162, 156 L.Ed.2d 162 (2003), (*citing Turner v. Safley,* 482 U.S. at 89–91, 107 S.Ct. 2254). The burden is not on the State to prove the validity of prison regulations, but on the prisoner to disprove it. *Id.* The Department aptly notes that the Prisoners have not even attempted to satisfy this burden or otherwise demonstrate the invalidity of the regulation.

█ To the contrary, the Department contends that the undisputed evidence demonstrates that the restrictions on obscene materials advance a variety of legitimate penological interests including: preventing predatory behavior; preventing both consensual and non-consensual homosexual liaisons; preventing the spread of sexually transmitted diseases; and protecting the safety and authority of prison staff. We emphasize that the question is not whether the curtailment of distribution of obscene materials will remedy the aforementioned institutional concerns, but whether the Department reasonably believed that it would do so. The Department has established the reasonableness of its beliefs. It placed into evidence statistics demonstrating that the incidence of assault and sexual misconduct declined after its implementation of its new publication policy.[12] Considering the statistical evidence

arbiters of what constitutes the best solution to every administrative problem, thereby "unnecessarily perpetuat[ing] the involvement of the federal courts in affairs of prison administration." *Procunier v. Martinez,* 416 U.S. [396], at 407[, 94 S.Ct. 1800, 40 L.Ed.2d 224]. *Turner v. Safley,* 482 U.S. at 89, 107 S.Ct. 2254.

12. The Department's statistics demonstrate that, for the eleven-month period from August 1997 to September 1998, it issued 232.9 "misconducts" for assault per month. *See* Respondent's Brief in Support of Cross–Motion for Summary Judgment, Exhibit 5, No. 7 (dividing 2,562

presented and the fact that the underlying objectives of security and rehabilitation are legitimate and neutral government interests, we reject the Prisoners' challenges to DC–ADM 803. We further note that other courts, including the United States Supreme Court, have upheld similar restrictions on incoming publications in correctional facilities. *See, Thornburgh v. Abbott,* 490 U.S. 401, 404–05, 109 S.Ct. 1874, 104 L.Ed.2d 459 (1989); *Amatel v. Reno,* 156 F.3d 192 (D.C.Cir. 1998), *cert. denied,* 527 U.S. 1035, 119 S.Ct. 2392, 144 L.Ed.2d 793 (1999); *Mauro v. Arpaio,* 188 F.3d 1054 (9th Cir.1999).

## VII.

Having concluded that the Obscenity Law and DC–ADM 903 pass constitutional muster, we next examine the Prisoners' final argument that DC–ADM 803 violates Section 5903(g) of the Obscenity Law because it does not afford an inmate the right to have an impartial tribunal determine what constitutes "obscene." [13] As noted, pursuant to DC–ADM 803,

total assaults by eleven months). For the twenty-three-month period from October 1998 to September 2000, after the Department implemented its new publication policy, it issued only 174.3 "misconducts" for assault per month. *See Id.* at No. 8 (dividing 4,010 total assaults by twenty-three months). Similarly, the number of "misconducts" issued for sex-related behavior declined from fifty-two per month (572 total sex-related charges divided by eleven months) before the policy was implemented, to 40.2 per month (926 total sex-related charges divided by twenty-three months) after the implementation of the new publication policy. *See Id.* at No. 9 and No. 10, respectively.

**13.** Section 5903(g) provides as follows:

(g) Injunction.—The attorney for the Commonwealth may institute proceedings in equity in the court of common pleas of the county in which any person violates or clearly is about to violate this section for the purpose of enjoining such violation. The court shall issue an injunction only after written notice and hearing and only against the defendant to the action. The court shall hold a hearing within three days after demand by the attorney for the Commonwealth, one of which days must be a business day for the court, and a final decree shall be filed in the office of the prothonotary within 24 hours after the close of the hearing. A written memorandum supporting the decree shall be filed within five days of the filing of the decree. The attorney for the Commonwealth shall prove the elements of the violation beyond a reasonable doubt. The defendant shall have the right to trial by jury at the said hearing.

18 Pa.C.S. § 5903(g).

the IPRC determines whether an inmate may receive a publication. The Prisoners maintain that such procedure conflicts with the Obscenity Law. They offer no support, however, for their apparent theory that the elements of the criminal offense must be coextensive with the administrative process applicable to the disbursement of incoming publications throughout the prison system. The Prisoners fail to recognize that Section 5903(g) expressly applies to "proceedings in equity" instituted by "the attorney for the Commonwealth." Moreover, the Prisoners do not address the practical dilemmas that would arise if inmates were afforded a "jury trial" for each challenge to the IRPC's determination that an incoming publication contains obscenity. As we have concluded that DC–ADM 803 is reasonably related to legitimate penological interests, the Prisoners claim in this regard also fails.

In summary, we hold that the Commonwealth Court properly granted partial summary judgment in favor of the Department, thereby upholding Sections 6602(e) and (f) of the PLRA, the amendments to the Obscenity Law, and DC–ADM 803. We further hold that the Commonwealth Court properly granted summary judgment in favor of the Prisoners by ruling unconstitutional Sections 6602(a) through (c) of the PLRA, which address the payment of filing fees by prisoners commencing prison conditions litigation. We reverse, however, the Commonwealth Court's grant of summary judgment on the issue of whether Section 6605(a) is unconstitutional as violative of our Court's exclusive rulemaking authority under Article V, Section 10(c). As Section 6605(a), which provides for the automatic dissolution of a preliminary injunction after ninety days, intrudes upon our constitutionally conferred authority to create procedures for state courts, it must be suspended.

Justice SAYLOR joins Parts V through VII and concurs in the result relative to the balance of the opinion.